BLAIR ET AL., BY GUARDIAN, V. HOWELL ET AL.

1. **Parent and Child:** INHERITANCE BY ILLEGITIMATE CHILDREN: EVIDENCE OF RECOGNITION BY FATHER. The evidence in this case considered, (see opinion,) and *held* sufficient to establish such general and notorious recognition by a father of his illegitimate children as to entitle them to inherit from him under § 2466 of the Code.—BECK and REED, JJ., *dissenting.*

2. **Deed:** DELIVERY: POSSESSION AS EVIDENCE OF: CIRCUMSTANCES TO OVERCOME. The possession of a deed by the grantees is *prima facie* evidence of the lawful delivery of the same to them; and the evidence in this case (see opinion) *held* not sufficient to overcome such presumption, though it showed that the deed was not recorded until after the grantor's death, and that (under a reservation in the deed) he remained in possession during his life, and that the land was assessed to him and the taxes paid by him, and that he, after the date and acknowledgment of the deed, offered the land for sale. The deed in question was made by a father to his children.

*Appeal from Johnson Circuit Court.*

WEDNESDAY, APRIL 21.

THIS action is brought by two minor children, by their guardian, E. Wescott, against Mary A. Howell and others, who are children and heirs of Jesse Bowen, deceased. The plaintiffs claim that they also are children and heirs of Bowen, and they bring this action to establish their right as such heirs. They also pray for a decree setting aside an alleged

deed purporting to be made by the deceased to Mary A. Howell and others of his children. The court granted the plaintiffs the relief prayed, and from the decree the defendants appeal.

*Robinson & Patterson* and *Geo.G. Wright*, for appellants.

*M. Kavanagh*, *S. H. Fairall*, and *Boal & Jackson*, for appellees.

ADAMS, J.—The defendants deny that the plaintiffs are the children of Jesse Bowen, and deny, if they are such, that he

1. PARENT and child: inheritance by illegitimate children: evidence of recognition by father.

ever recognized them as such in such a general and notorious way as to constitute them his heirs under the statute. It is undisputed that the plaintiffs are the children of one Rosanah Blair, now deceased; that for several years previous to her death she was called Mrs. Blair, in the community in which she lived, which was in and near Iowa City; and the defendants' position is that we must assume that she was a márried woman, the wife of a man by the name of Blair; and if she was, that the law presumes that the plaintiffs are the legitimate children of the husband Blair. Nothing is shown of the history of Rosanah Blair prior to the time when she came to Iowa City. She did not live with any man there, or in that neighborhood, other than Jesse Bowen, and no one there appears to have had any knowledge of any man who claimed to be her husband, or conducted himself as such. The only evidence that she had been married appears to be that she was called Mrs. Blair. But such fact alone does not, in our opinion, constitute legal evidence. It seems probable that she was called Mrs. Blair because she had children when she came to Iowa City, or because she called herself such; but neither of those facts would be sufficient to raise a presumption of marriage. We see nothing, then, in the way of the conclusion that the plaintiffs were born out of wed-

lock; and the next question to be determined is as to whether Jesse Bowen was their father.

It is shown, beyond controversy, that he was greatly attached to the plaintiff's mother; that he visited her frequently; assisted her with money; and indulged in such intimacy as to afford the strongest ground for belief that his relation to her was meretricious. We do not deem it necessary to set out the evidence tending to show the alleged paternity of the plaintiffs. It is sufficient to say that it leaves no reasonable doubt upon our minds. That the defendants themselves had little, if any, doubt of it, is indicated by their conduct towards their father during the last years of his life.

The only difficulty, if there is any, arises upon the question as to whether Bowen's recognition of the children was general and notorious, within the meaning of the statute.— Code, § 2466. It is proven that Bowen sometimes denied that the plaintiffs were his children. In such denial he certainly did not recognize them. It is claimed, therefore, that his recognition was not general, but, at most, was limited and partial. But everything is limited and partial which is not universal, and "general" is not equivalent to "universal." Webster says that the word "general" means "extensive, though not universal." We think that the evidence shows clearly that Bowen's recognition of the plaintiffs was general. They were not only born during his intimacy with the mother, but he visited the mother immediately after her confinement with one of them, and manifested especial interest in the new-born child. He settled her bills, provided for the children, and afterwards took the mother and children into his own family. He became deeply attached to the children, and in all his treatment of them he had precisely the bearing, as far as was observable, of an affectionate father towards his children. He addressed each as "My son," and spoke of himself to them as "Your papa."

We are aware, as is urged by defendants, that such words

are sometimes used as a mere expression of familiarity or affection, and without intention of making any claim or recognition of paternity. But the case before us had this peculiarity, that the plaintiffs had no other ostensible paternity, and Bowen well knew this, and knew that others knew it. It is incredible that any man would treat any other man's illegitimate children as he treated the plaintiffs, nor can we account for a man's treating his own illegitimate children in that way, without an intention to recognize them as his children. Now, his general bearing towards them being such as involved a recognition, it follows that the recognition was general. We think, too, that the recognition was notorious. It was open,—not concealed, except upon exceptional occasions. It was not, to be sure, widely known. The family, we infer, lived rather obscurely. It does not appear to have been a subject of much general interest. But Bowen's support of, and care and affection for, the plaintiffs, and general paternal bearing towards them, was observable by all, or nearly all, who came to the house. The notoriety of the recognition appears to have been about as wide as circumstances admitted.

We come next to consider the question as to the deed purporting to be executed by Bowen to certain of his children. It is claimed by the plaintiffs that Bowen did not deliver the deed, and accordingly that it did not take effect. The deed at the time of the trial was in the grantees' possession. It is conceded by the plaintiffs' counsel that such possession was *prima facie* evidence of delivery by the grantor. But it is insisted that the presumption is of that character that it may be overcome by slight circumstances, and that the proven circumstances are sufficient to overcome it.

2. DEED: delivery: possession as evidence of: circumstances to overcome.

The circumstances relied upon are that no witness was found who saw the deed in the grantees' possession prior to the grantor's death; that it remained unrecorded until after his death; that the grantor remained in possession of the

land; that the land was assessed to him, and the taxes paid by him; and that the grantor, subsequently to the date and acknowledgment of the deed, offered the land for sale. The plaintiffs rely upon *Stewart v. Stewart*, 50 Wis., 445; S. C., 7 N. W. Rep. 369, in which the facts appear to have been nearly the same, except in regard to the character of the deed. In the deed in question the right of possession and enjoyment was reserved to the grantor during his life. The conveyance seems to have been accepted as a substitute for a disposition by will, and we think it was looked upon by the grantees as such.

It may or may not have been understood that the deed was not to be recorded during the grantor's life, and while he was entitled to the possession and enjoyment of the land. But, even if there was no such understanding, it does not seem unnatural that the deed should have been withheld from the record during the time that the grantor was entitled to the possession and enjoyment of the land, and expected to pay the taxes. The very matter of the assessment might have constituted a sufficient motive, if there had been no other. The offer of sale by the grantor may have been made with the grantees' consent, and with the purpose on his part of giving them the proceeds. So long as the deed was not recorded, and the grantor was rightfully in possession, all parties might have thought it advisable that a sale, if made, should be made in his name. He had, too, a life-estate in the property, and a clear title could not be given without his joining in the deed. It must be borne in mind, too, that the grantees were children of the grantor, and that business between parties thus related is not usually done in quite the same way in which it is done between others. It seems to us, therefore, that the circumstances relied upon are consistent with the supposition that the deed was delivered, and that the presumption arising from possession was not overcome.

But the plaintiffs insist that there was evidence that the

deed was found by the grantees after the grantor's death, among his papers, and, if so, that such fact would show that it was not delivered. As to this evidence, the most that can be said is that one Sterling, husband of one of the grantees, testified at one time that the deed was found among the grantor's papers after his death; but he afterwards showed that that was merely his supposition, and that he had no personal knowledge on the subject. We conclude that there was a delivery of the deed, and that the court erred in not sustaining it. The decree must be

MODIFIED and AFFIRMED.

BECK, J., *dissenting.*—I concur in that part of the opinion which sustains the validity of the deed to the defendants, or some of them, but I cannot concur in the conclusion that the children were so generally and notoriously recognized by the deceased that they may inherit his estate. A great portion of the evidence seems to be intended to raise a presumption that the deceased was the father of the plaintiffs. This evidence is referred to in the opinion of the majority. The fact that there is ground to believe that he was their father has nothing to do with the case. As their paternity was not proved in his life, and he has not recognized them in writing, they cannot inherit unless they prove general and notorious recognition as his children by the deceased. See Code, § 2466. About all the evidence of recognition found in the record is that he was kind to the plaintiffs, called them, when addressing them, "my sons," and used other endearing expressions towards them, and, in some instances, admitted that he was their father. But on the other hand he declares to other persons that he is not their father, and makes statements of his physical condition which would render it impossible for him to become the father of a child. Now, can it be said that one generally recognizes a child as his own who sometimes admits he is its father, and at other times denies it, and says that he is incapable of becoming a father?

I think not. It seems to me that the term "general recognition," used in the statute, does not describe the alleged recognition in this case, which was not uniform, and was not made on all occasions when the deceased spoke upon the subject. In my opinion, the statute, by the use of the words "general recognition," contemplates a case wherein paternity is not denied when the subject is spoken of by the father. It is certainly not "general recognition" when paternity is sometimes admitted and sometimes denied.

REED, J., concurs in this dissent.