MARY FOLEY, *et al.*, Plaintiffs, v. MARY McNAMARA, *et al.*, Defendants, and CORNELIUS J. McNAMARA, Defendant and Appellant.

**Delivery: Evidence.** On one side, a witness said that decedent, shortly before his death, walked across a room and handed a son an envelope. The son recorded a deed. Decedent at one time intended to convey to the son. On the other, there is a preponderance that the father was too feeble to so act at the time; that the grantee, both before and after the death, acted as though the decedent's land was not his; and he witnessed an attempt to devise it to others, without asserting title. *Held*, a finding that there was no delivery will stand.

*Appeal from Woodbury District Court.*—HON. A. VAN
WAGENEN, Judge.

THURSDAY, FEBRUARY 4, 1895.

Action for the partition of certain real estate.
Defendant Cornelius J. McNamara appeals.—*Affirmed.*

*Swan, Lawrence & Swan* for appellant.

*Marks & Mould* and *T. P. Murphy* for appellees.

Kinne, J.—I.   Plaintiff and defendants are the
children and widow of Roger McNamara, deceased.
This action was begun by Mary Foley and her husband
against Cornelius J. McNamara, and the widow Mary
McNamara, William C. McNamara, and his wife, for the
partition of forty acres of land and certain city property
of which it is claimed said Roger died seized.   Cornelius
J. McNamara filed an answer, claiming title to the land.
The District Court decreed the widow entitled to have
set apart to her one-third in value of the property, and
that Mary Foley, William C. McNamara, and Cornelius
McNamara were each entitled to two-ninths of the
property described in the petition.   The defendant
Cornelius alone appeals.
II.   Cornelius McNamara claims that he was the
absolute owner of the forty acres of land prior to his
father's death, by virtue of a warranty deed executed
to him by said Roger McNamara and wife on April 19,
1886.   The real controversy between the parties is as
to whether this deed under which Cornelius claims title
was ever delivered to him.   Cornelius claims that the
deed was delivered to him first in May, 1886, by his
father; that he (Cornelius) then placed the deed in an

envelope, indorsed his name upon it, and handed it to his father to keep for him. No one else was present at the time of this claimed delivery. He also claims that he arrived in Sioux City two or three days before his father's death, which occurred on March 26, 1887; that after his arrival, and while at his father's house, and in the presence of his uncle, the father arose from his couch, walked across the room to the bureau, and took therefrom this deed, and delivered it to Cornelius. Cornelius' testimony is corroborated by the uncle to the extent that he saw the deceased get up and go to the bureau, and get an envelope therefrom, and hand it to the son. It may be said that the son was not a competent witness to testify touching the delivery of this deed from his father to himself, or to the statements of the father which accompanied the delivery. Eliminating this evidence of the interested son, and the only evidence tending to show a delivery of the deed is the fact that it was in the possession of Cornelius, and by him placed upon record, and the testimony of the uncle as to the delivery a couple of days before Roger's death, and other evidence as to his ability to walk at the time it is claimed he went to the bureau and got the deed. The presumption is that the deed, being in the custody of the grantee, was delivered to him by the deceased. *Wolverton v. Collins*, 34 Iowa, 238; *Craven v. Winter*, 38 Iowa, 471; *Blair v. Howell*, 68 Iowa, 619, 28 N. W. Rep. 199; *Hutton v. Smith*, 88 Iowa, 238, 55 N. W. Rep. 326. But this presumption may be overcome. If the grantee came into possession of the deed without the knowledge or consent of the grantor, then there was no delivery, and the title did not pass. *Hutton v. Smith*, 88 Iowa, 238, 55 N. W. Rep. 326; *Steel v. Miller*, 40 Iowa, 406; *Stevens v. Castel*, 63 Mich. 111, 29 N. W. Rep. 828; *Golden v. Hardesty*, 93 Iowa, 622, 61 N. W. Rep. 913. Was the deed delivered during the last

visit of the son to his father, two or three days prior to the latter's death? If the testimony of the uncle is to be believed, an envelope was then given the son by the deceased. But the uncle does not know what was in the envelope, if anything. There is a sharp conflict in the evidence as to the physical condition of the father at the time this last delivery is claimed to have taken place. We think that it is shown by more than a preponderance of the evidence that the father at that time was not able to get up or to walk or to go from his couch to the bureau, without asistance, and get the deed, as it is claimed that he did. He was so enfeebled by old age and so weak as to be practically unable to help himself. Our conclusion that this deed was never delivered is strengthened by other facts, to some of which we may refer. In conversations relating to this land, both before and immediately after his father's death, Cornelius never alluded to the fact that he had title to this land. He did refer, after his father's death, to the fact that his mother could rent the farm to get money for her support, and that after awhile, if she wanted, she could sell it. He stood by when his father was making his will, and knew that he was attempting to devise this land as his own, and never intimated that he had title to it. The father had at one time intended to deed this land to Cornelius, but the evidence shows that he had changed his mind, and concluded to leave it in equal shares to all of his children. These and many other facts, which we cannot refer to in detail, satisfy us that the deceased never delivered this deed. With this disposition of the case we need not pass upon the motion to affirm or dismiss the appeal. The decree below is *affirmed*.