CRANE v. CRANE *et al.*

Illegitimates: RECOGNITION BY FATHER: INHERITANCE. The recognition in writing of an illegitimate child by the father, provided for by the statute (Rev., § 2442), is not required to be in the shape of a formal avowal, executed for the purpose of making known and perpetuating the fact, but may be sufficiently established from letters and correspondence. And when the recognition is thus established the illegitimate will inherit from his father, the same as a legitimate.

*Appeal from Muscatine District Court.*

WEDNESDAY, APRIL 19.

ACTION in equity by the plaintiff to establish his right to inherit, as illegitimate son and heir at law, the estate of Sylvanus B. Crane, Sr., deceased. The defendants are the administrators, the widow and the brothers of said Crane, Sr., deceased. Upon the trial, which was by the first method, the district court found the following facts:

1. That the plaintiff was born out of wedlock, on the 22d day of February, 1845, at the town of Eugene, in the county of Vermillion, in the State of Indiana.

2. That Sylvanus B. Crane, Sr., deceased, and Philena Whipple, at and before the birth of said plaintiff, resided in said Vermillion county, Indiana; and that said Sylvanus, deceased, was the father, and the said Philena, deceased, was the mother of plaintiff.

3. That, therefore, the said plaintiff is an illegitimate son of the said Sylvanus B. Crane, deceased.

4. That, soon after the birth of plaintiff, Sylvanus B. Crane, now deceased, recognized the plaintiff as his son; and that such recognition was general and notorious in the neighborhood and county where the plaintiff and the said Sylvanus B. Crane, now deceased, then lived.

5. That the said Sylvanus B. Crane, deceased, on the 16th day of September, 1847, intermarried with Philena Trull. But it does not appear that, at the time of said marriage, the said Philena Trull had any knowledge of the facts found in the four preceding divisions; I, therefore, find that she had no knowledge thereof.

6. That in the month of January, in the year 1851, said Sylvanus B. Crane, now deceased, removed to Muscatine, Iowa, where he continued to reside until the 14th day of November, 1865, at which date he died intestate,

leaving his widow him surviving, by whom he had no issue.

7. That the said Sylvanus B. Crane, deceased, after his removal to Muscatine, Iowa, had some conversations in regard to this matter, and some correspondence with persons who were previously aware of the facts, and that he communicated the fact of his having an illegitimate son to J. C. Traer, to Joel Houghton and to Charles Evans, the first residing at Vinton, and the last two at Muscatine, Iowa.

Upon these facts, the district court *held* in substance, that the general and notorious recognition of the plaintiff by the deceased, Sylvanus B. Crane, as his son, having been in the State of Indiana and before his residence in Iowa, as well as before the statute under which plaintiff claims was enacted, that such recognition could not avail plaintiff; and that the written recognition, as proved in the case, was insufficient, because the recognition in writing required by the statute means a formal avowal in writing by the deceased of a fact previously known to him, namely: the fact that the plaintiff was his son; and that such avowal must be contained in some writing executed for the purpose of making known and perpetuating the fact.

The district court, therefore, dismissed the plaintiff's petition at his costs. The plaintiff appeals.

*Thomas Hanna* for the appellant.

*Richman & Carskadden* for the appellees.

Cole, J. — This is an action in equity and was tried by the first method, and although the facts were found by the court, yet the cause is to be tried here *de novo* upon the evidence. There is, however, no controversy here as to the correctness of the finding of facts by the district court, except it may be as to the omission to specifically find the

fact of recognition in writing. The chief controversy is upon the legal conclusions found by the district court. It may contribute to a clearer apprehension of the questions involved for us to state a little more in detail the facts of the case.

The plaintiff was the child of an unmarried woman, Philena Whipple by name, and was born in Vermillion county, Indiana, on the 22d day of February, 1845. After his birth a short time, proceedings under the bastardy statute were commenced against Sylvanus B. Crane, Sr., now deceased, as the father. He appeared thereto and acknowledged that he was the father of the child, now the plaintiff, and he contributed to the support of plaintiff, perhaps beyond the requirements of the law. The proof is abundant that his recognition of the plaintiff as his child was then general and notorious. After two or three years, probably in 1847, the mother of plaintiff died, and his grandfather was appointed his guardian. Subsequently thereto, Sylvanus B. Crane, Sr., now deceased, made application to the probate court for the removal of the grandfather, and for his own appointment as guardian of the plaintiff, representing that he was the putative father of the child. The application was, however, withdrawn without being acted upon.

In 1847, but whether before or after the death of plaintiff's mother does not appear, the said Sylvanus B. Crane, Sr., intermarried with Philena Trull, who did not live with him all the time up to his death, but who is now his widow and a defendant in this action, though not defending. In January, 1851, Sylvanus B. Crane, Sr., removed to Muscatine, Iowa, and within two or three years thereafter the family of the plaintiff's mother, including her father, brothers, sisters, etc., moved to Benton county, Iowa. As early as 1853, and frequently thereafter, Sylvanus B. Crane, Sr., told Charles Evans, his business partner, that he had a child, born out of wedlock, which had been the occasion

of differences between him and his wife; that in 1854 he went to Vinton, in Benton county, to see his boy, as he said. He often mentioned the same fact to Joel Houghton, his family physician. The deceased often furnished the plaintiff money, and supported him at the Iowa State university and other schools. The plaintiff visited the deceased several times at Muscatine, pursuant to his request, and received money and advice from him there.

Upon the subject of recognition in writing, the following evidence *inter alia*, was introduced: J. C. Traer testified that he knew deceased since 1853, and knew that he recognized the plaintiff as his son, but whether such recognition was notorious or not he cannot say; states that in 1852 or 1853 deceased wrote a letter to witness, which has been destroyed, and the contents were about as follows: "That in his younger days he sowed a good many wild oats, and, as a consequence, an illegitimate child had been born, of which he was the father, and one Philena Whipple the mother of the child, the same being a son, and living at his grandfather Whipple's, near Vinton, in Benton county, Iowa. He requested me to see the grandparents and make arrangements for the support and education of the child at his expense."

"MUSCATINE, IOWA, *Feb.* 26, 1861.
"*Brother C. W. Crane:*

"Your kind letter was received and contents noticed. I was glad to hear from that boy. I wish you would place him to the best school you can find to suit his capacity, and furnish him with good clothing, books, etc., and send me what it costs, with three months' board, and I will remit to you the money. You can say to him I will write to him as soon he can read, and write me. I will send him to school as long as he wants to go. I am glad you are doing a good business. Write me again soon.

"Yours, S. B. CRANE."

"MUSCATINE, *March* 14, 1861.

"*Mr. L. R. Whipple:*

"SIR: Your letter of March 9th is received, and contents noted. I am very glad to be of service to my boy after so long a delay. If it suits him and your mother best, he can return to Vinton and go to school there until he gets so he can read and write, and then I will get him a higher school. There is a very good school at Mt. Vernon, Linn county, Iowa.

"I am quite busy, and will be until next month, but in May I will visit Vinton and see my boy. The sooner he can get to school the better it will suit me. I send you $25 for him to buy books and clothing to commence with. I did not understand your arrangements; of. course, I only felt anxious to get the boy to school, so that he could get to learning as soon as possible. I presume that you or your mother know J. C. Traer, of Vinton, who lives or used to live in Vinton. I have not been in Vinton for four or five years. If Mr. Traer is in business there, he will be a good man to apply to for counsel. You will please write me what you will do.

"Yours respectfully,

"S. B. CRANE."

Inclosed therein was the following:

"MY DEAR BOY, SYLVANUS: After so long delay and neglect, I have at length heard from you. I hope you will learn to read and write, and then in time you will become a good man. I will try to see you in May and make further arrangements for your welfare.

"I am affectionately yours,

"S. B. CRANE."

"MUSCATINE, *April* 4, 1861.

"SYLVANUS, MY DEAR BOY: I received the few lines from you, and am glad that you can write as well as you

can. If there is a school at Eugene, I think you had better go to school there while you stay. I shall be away from home a month or two, and if I can make it in my way to come to Eugene, I will. You need not write to me again until you hear from me, as I shall not be at home.                    " Yours,

                                "S. B. Crane."

At the time of the birth of the plaintiff, and at the time of the general and notorious recognition of him by Sylvanus B. Crane, Sr., as his son, and indeed up to July, 1851, the statutes of Indiana and Iowa were substantially the same, to wit: that if the parents of an illegitimate child intermarry and the father afterward acknowledges the child, such child shall be deemed legitimate; although the Indiana statute contained the further provision that an illegitimate child may inherit from the father who has acknowledged him as such child during his life-time, and dies intestate, leaving no legitimate heirs in the United States. 1 R. S. (G. & H.) Ind. p. 293.

The statute of Iowa on the subject was changed by the Code of 1851, and is still the same as then enacted, as follows: Rev., § 2441. Illegitimate children inherit from the mother, and the mother from the children. § 2442. They also inherit from their father whenever they have been recognized by him as his children; but such recognition must have been general and notorious, or else in writing.

It is not necessary for us to discuss or pass upon the first proposition of law as found by the learned district judge who tried the cause below, to wit: whether the general and notorious recognition in another State, and anterior to the enactment of our statute making such recognition sufficient, can avail plaintiff in this case, and this because we ground our decision entirely upon the second proposition, to wit: the written recognition of plaintiff as his child, by Sylvanus B. Crane, Sr., now deceased.

We find, as a matter of fact, that the said Sylvanus B. Crane, deceased, did recognize in writing the plaintiff as his child. Indeed, it seems to us impossible to avoid this conclusion of fact, even upon the evidence above set out. The witness, J. C. Traer, testifies to the receipt of a letter from the deceased, in which he stated that an illegitimate child, a son, had been born, of which he was the father, and one Philena Whipple the mother; and further identifies the child by stating the place and family in which he dwelt, and the relation he bore to the family. It is true, the letter is not produced, but its existence and loss is shown, and the testimony as to its contents is made competent thereby. The testimony may not be as satisfactory, though it is as competent, as the letter itself. We are not at liberty, in the absence of impeaching circumstances, to wholly disregard this testimony. But further than this, the other letters, two of which are to the plaintiff himself, one to a brother of the mother of plaintiff, and one to a brother of the deceased, when fairly construed in the light of the facts proven in the case, tend strongly to constitute a recognition in writing of the plaintiff as the *child* of Sylvanus B. Crane, deceased. True, the letters do not contain the expression "my child," but in his letter to L. R. Whipple, the brother of plaintiff's mother, he says "in May I will visit Vinton and see *my boy;*" and in the letters to plaintiff he addresses him "my dear boy Sylvanus;" and the contents of the letters tend strongly to show the recognition of plaintiff as his child.

The question of law then arises, whether such a recognition in writing is sufficient under the statute, or is it necessary that the writing should be a formal avowal executed for the purpose of making known and perpetuating the fact. The learned district judge, in an elaborate written opinion, which has been kindly furnished us, held the latter view; and, while we acknowledge the ability and force of the argument made in support of that view, we

are, nevertheless, constrained to hold the writing as shown in this case sufficient to entitle plaintiff to inherit from the deceased father thus recognizing him.

It has been uniformly held under the statutes of frauds, requiring the evidence of certain specified contracts, etc., to be in writing, that it was sufficient if such contracts could be proved by writing, although it should be by correspondence, or to be made out from several different writings, though none of them were made as formal avowals of such contracts, or even with a belief that they were to be used for any such purpose. The same ruling has obtained in respect to written admissions required by statute to defeat the bar of the statute of limitations, and to bind one for contracts made while an infant.

It seems to us that this statute ought not to receive a more strict construction in this regard than the statutes just referred to, for this statute provides that a general and notorious recognition shall obviate the necessity of a writing, a provision more lax than any found in the other statutes.

While we thus hold, a majority, nevertheless, confess to an inclination against the statute, so far as respects its wisdom and policy. It seems to us well to provide that the subsequent marriage of the parents of an illegitimate child should have the effect of enabling the child to inherit from its parents. Both parents, in such case, are interested in the child, and other children born to them have no injustice done them by the statutory capacity of inheritance given such child. But when, as under our statute may easily be done, an illegitimate child of the one parent can say to the legitimate children of both parents, "you must divide equally the inheritance with me," it affords a just ground of complaint by the other parent that her children, or, as in this case, herself, must surrender the fruits of her industry to one in whom she has no interest and bears no relation, save in the shame he brings. But it is our duty to construe and enforce, not to make statutes.

The judgment of the district court is reversed, and the cause remanded for further proceedings, not inconsistent with this opinion.

Reversed.

---

31 305
80 412

31 305
82 491

31 305
101 120

31 305
o115 23

31 305
o124 79

31 305
131 692