|107   247|
|110   676|

107   247
o114   34
114    38

|107   247|
|128   175|

107   247
133   302

PETER R. L. VAN HORN v. WM. VAN HORN, Appellee,
REBECCA A. STROUBLE AND SUSANNAH BOWLBY,
Appellants.

**Bastard as Heir:** RECOGNITION BY FATHER.   Under Code, 1873, section 2466, entitling illegitimates to inherit from the father where
he has openly and notoriously recognized them as his children, it is immaterial that such recognition was in a state which did not permit bastards to inherit from the father.

EVIDENCE OF RECOGNITION.   Deceased waited on his father's housekeeper, and escorted her to various entertainments, and after the birth of her child visited her many times and spoke of it as his son, and gave her money to buy it clothing.   Bastardy proceedings were instituted against him, to the common knowledge of the community, under which she received aid until she died.   Two witnesses testified that he generally recognized the son as his, which fact was generally known in the neighborhood.   There was evidence that while deceased lived in New Jersey, where the child was born, he generally called and treated it as his son, and several years before his death returned from Iowa to New Jersey on a visit, and inquired after him, and spoke of him as his son and .called him such openly and before many people.   In Iowa deceased spoke to several people of having an illegitimate son in New Jersey, describing him, and up to his death spoke of him as a relative, sometimes as a nephew and sometimes as a son    *Held*, that there was such general and notorious recognition of him as his son as would entitle him, under Code, 1873, section 2466, to inherit from his father.

*Appeal from Howard District Court.*—HON. A. N. HOBSON,
Judge.

SATURDAY, JANUARY 21, 1899.

THIS proceeding is to establish plaintiff's right as an illegitimate son to inherit the property, real and personal, of one Peter Van Horn, who died intestate in Howard county, Iowa, in August of the year 1895. The deceased was never married, and the defendants are his brothers and sisters.   In answer to plaintiff's claim defendants made a general denial,

and further pleaded that at the time of plaintiff's birth, and for many years thereafter, both he and his putative father were residents of the state of·New Jersey, and that by the laws of that state in force prior to and since 1854 there was no provision whereby an illegitimate child may inherit from his father. Plaintiff's demurrer to this affirmative plea was sustained, and the cause was tried on the issue tendered by the general denial, resulting in a decree for plaintiff, and defendants appeal.—*Affirmed*.

*H. L. Spaulding* and *John McCook* for appellants.

*H. T. & C. W. Reed* for appellee.

DEEMER, J.—Appellee was born in the state of New Jersey in January of the year 1854. His mother was Sarah Ann Scales. She died in the year 1859, at the age of 31. About the year 1857 Peter Van Horn, deceased, moved to Howard county, where he resided most of the time until his death. As we have said, he was unmarried, and the defendants are his brothers and sisters, who claim his property by right of inheritance. Appellee claims that Peter Van Horn was his father, and that the deceased recognized him as his son while both lived in the state of New Jersey, both orally and in writing, and that he is entitled to inherit as such. At common law bastards could not inherit from either parent. They were regarded as *nullius filius,* or *filius populi.* This rule has been changed by statute in this state, which provides that "they [illegitimate children] shall inherit from the father whenever the paternity is proven during the life of the father, or they have been recognized by him as his children, but such recognization must·have been general and notorious or else in writing." Code 1873, section 2466. They may always inherit from the mother. Code 1873, section 2465. These statutes were enacted prior to the year 1851, as they are found in the Code of that year as sections 1415 and 1416. They were in force at the time of the plaintiff's birth, and he is entitled to

the benefit thereof, provided he has shown that the deceased
father generally and notoriously recognized him as his child
or made such recognition in writing.

At the threshold of the case we are met with the proposi-
tion that the court erroneously sustained plaintiff's demurrer
to that part of the answer pleading the affirmative defense, and
this same proposition is made the basis of objections to
some of the evidence adduced. It is said that recog-
nition of plaintiff by the deceased in the state of New
Jersey, which state has no statute allowing an illegitimate to
inherit, does not give plaintiff the right of succession; and
several cases are cited in support of the contention. None of
them, however, seem to be exactly in point. The case of *Crane
v. Crane,* 31 Iowa, 296, sheds no light on the question. *In re
Sunderland's Estate,* 60 Iowa, 732 involved the construction
of section 2454, of the Code of 1873, which provides that the
heirs of an intestate's deceased child may inherit in the same
manner as though the child had outlived its parents. The
question there determined was whether or not a child adopted
under the laws of the state of Louisiana was such an one as
the statute contemplated. A majority of the court held it was
not. *Hartinger v. Ferring,* 24 Fed. Rep. 15, simply holds
that sections 1415 and 1416 of the Code of 1851 are not retro-
active. *Smith v. Derr's Admr's,* 34 Pa. St. 126, holds that a
decree of a foreign state legitimatizing an illegitimate child
was not binding upon the courts of Pennsylvania in determin-
ing the right of succession or descent of real property sit-
uated in that state. In *Blythe v. Ayres,* 96 Cal. 532 (31
Pac. Rep. 915), Garoutte, J., writes an able opinion covering
the entire ground, and he concludes that statutes similar to
the one upon which plaintiff relies are statutes of descent, and
that the domicile or status of the child and the extraterritorial
operation of state laws are wholly immaterial matters. And
this, it seems to us, is the correct doctrine. It is written on the
hornbook of the law that, as a general rule, the succession of
personal property is regulated and governed by the law of the

owner's domicile, while that of real property is governed by the law of the place where it is situated. 3 Washburn Real Property (3d ed.), p. 16, section 32, and cases cited; Tiedman Real Property, section 664. The statute under consideration is undoubtedly a statute of descent, and must, like other statutes in derogation of the common law, be liberally construed, with a view to promote its objects and assist the parties in obtaining justice. Code 1873, section 2528. It is quite immaterial, then, where the acts of recognition relied upon occurred; for, if plaintiff brings himself within the terms of the statute, he is the legal heir of the deceased, and entitled to inherit. Such seems to be the conclusion arrived at by the supreme court of the United States in *Investment Co. v. Caldwell,* 152 U. S. 65 (14 Sup. Ct. Rep. 504). See, also, *Caldwell v. Miller,* 44 Kan. Sup. 12 (23 Pac. Rep. 946); *Harvey v. Ball,* 32 Ind. 98; *Miller v. Miller,* 91 N. Y. 315. It may be that the plaintiff's status is to be determined by the law of his mother's domicile, or, in the event of her death, by that of his own, or of his father's; but with that question we have nothing to do. The sole inquiry here is, is he entitled to inherit the real estate and personal property situated in this state, under the facts presented in evidence? Our conclusion is that the laws of New Jersey are wholly immaterial to this inquiry, and that the trial court was right in sustaining plaintiff's demurrer. What, then, must plaintiff do in order to establish his heirship? This query is answered by turning to the statute, which says, in substance, that paternity must be proven during the lifetime of the father, or that the father must have recognized him as his child, either in writing or generally and notoriously. In construing this statute we have held that this recognition need not be made in the shape of a formal avowal, but may be sufficiently established by letters and correspondence. See *Crane v. Crane, supra.* And we have also said, in construing the words "general and notorious," as used in this statute, that "general" is not equivalent to universal, and that "general" means extensive, though not universal;

that "notorious" is synonomous with open, and should be construed with reference to the circumstances and surroundings of the parties.

With the rules of law thus settled, we now turn to the evidence, and, without setting it out in detail, state our conclusions therefrom as follows:   Plaintiff's mother lived with the father of the deceased as his housekeeper during the summer and fall of 1853.   Deceased, who was then a young man, waited upon her and escorted her to various entertainments.   After the birth of plaintiff, deceased visited the mother many times, and spoke of the child as his son.   He also gave the mother money with which to purchase clothing for it.   It also appears that bastardy proceedings were instituted in the state of New Jersey against the deceased, and that under these proceedings the mother received aid for the support of the child until she died.   One of the defendants made affidavit in which she stated that deceased generally recognized plaintiff as his son, and that such fact was generally known in the neighborhood.   Another sister, who is also a defendant, made a similar affidavit.   Other witnesses testify that while deceased lived in New Jersey he generally called and treated plaintiff as his son, and that he was generally so recognized in the community.   In the year 1888 the deceased returned to New Jersey on a visit, and while there inquired after plaintiff, spoke of him as his son, and called him such openly and in the presence of many people.   A great number of witnesses testify to having heard of the bastardy proceedings, and say, in effect, that this was common knowledge of the community.   Soon after coming to Iowa, the deceased spoke to several people about having an illegitimate son in New Jersey, and so described him as to leave no doubt that he referred to plaintiff.   As late as the year 1895 the deceased spoke of plaintiff as his son to his neighbors in Iowa.   From about the year 1876 until 1885 or 1886, deceased was in the insane hospital at Independence.   During the latter years of his life, deceased introduced plaintiff as a relative, sometimes

as a nephew and sometimes as a son. There are many other acts of recognition and notoriety, which need not be referred to, as we have said enough to show the general tenor of plaintiff's evidence. Defendants introduced evidence tending to show that deceased denied that plaintiff was his son, and also to the effect that it was not a notorious fact in the community in which he lived. While giving full force to the evidence, it seems to us that there can be no doubt that plaintiff is the son of Peter Van Horn, and that deceased's recognition of him as such was general and notorious within the meaning heretofore given those terms by this court. We have gone over the entire record with care, and have many times resorted to the transcript; and, without further extending this opinion, it is sufficient to say that, disregarding all improper and irrelevant evidence, of which there was much, we still think that plaintiff has brought himself within the letter of the statutes and is entitled to inherit. The decree of the district court is therefore AFFIRMED.