114    29
114   602

114    29
116   567

114    29
128   175

114    29
e133   302

WILLIAM D. ALSTON, *et al.,* Appellants, v. WILLIAM E. ALSTON, *et al.*

Bastards: RECOGNITION: *May be established in partition suit.* An illegitimate child may maintain a partition suit against lawful children, on showing his relationship and recognition by their common father, and need not first establish his heirship by other proceedings.

EVIDENCE OF: *Statutes.* Evidence of acts and conversations of the alleged father of an illegitimate child, tending to show recognition of the child as his own, is admissible in a partition suit brought by such child against lawful children, though such acts and conversations occurred prior to the adoption of Code, 1851, under which illegitimates were given the right to inherit from their father when recognized by him as his children.

*Of pedigree—hearsay.* Where an illegitimate child is adopted and raised by a man and wife for a consideration paid by the father, their declarations are admissible as to the child's relationship and paternity, as within the exception to the general rule of evidence admitting hearsay in cases of pedigree.

*Evidence held sufficient.* Evidence showed that a putative father visited plaintiff on various occasions, spoke to him as his son, and was addressed by him as a son would address a father. The father often referred to him as his son, placed him with a family for adoption, took a special interest in him during his sickness, and not long before his death gave him a warranty deed for 120 acres of land for the express consideration of $1. The father knew that plaintiff was reputed to be his son, but never repudiated the relationship. None of the witnesses who testified that they had never heard that the father had such a son were acquainted with the son. *Held,* sufficient to show that plaintiff was the son of the putative father, and that he was generally and notoriously recognized by him as such.

RECOGNITION OF HEIRSHIP NOT REQUIRED. Under Code, section 3385, providing that "An illegitimate child, in order to inherit from its father, unless the paternity is proven during the father's life, must have been recognized by him as his child, and such

recognition must have been general and notorious, or else in writing," the recognition required is not that the father shall have recognized the illegitimate as entitled to inherit, but only that he shall have recognized him as a child.

**Appeal:** STRIKING ABSTRACTS: *Signature of counsel.* Abstracts will not be stricken from the files on the ground that the names of counsel are not at the end thereof where they are given on the first page.

*Abstract for trial de novo.* To secure a trial *de novo*, an appellant need not allege in his abstract that it is an abstract of all the evidence, and that the evidence was ·preserved in the proper manner.

*Timely filing of amendment.* Amendments to abstracts will not be stricken out for failure to file within the time required by the rules of the supreme court, where no prejudice results to the opposite party.

*Appeal from Jefferson District Court.*—HON. F. W. EICH-ELBERGER, Judge.

TUESDAY, MAY 14, 1901.

ACTION for partition. Defendants William E. Alston, Mary M. Vote, and Henry C. Alston are alleged to be heirs of William Alston, who died intestate in 1896, seised in fee of the real estate described in the petition. · The plaintiff William D. Alston alleges that he is a natural son of said William Alston, deceased, recognized by him as such during his lifetime, and plaintiff claims, therefore, to be entitled to share equally in the real estate of the father with the three legitimate heirs, and he asks partition accordingly. The joint plaintiff, Margaret A. Alston, is the wife of William D. Alston, and the joint defendant, Anna A. Alston, is the wife of Henry C. Alston, and their interests in the suit are only their inchoate rights of dower. For purposes of reference in the following opinion, William D. Alston will be treated as sole plaintiff, and the three legitimate children of William Alston will be treated as the defendants. Plaintiff's bill was dismissed upon its merits, and he appeals.—*Reversed.*

*Leggett & McKemey* and *I. D. Jones* for appellant.

*Rollin J. Wilson* and *M. J. McCoid* for appellees.

McCLAIN, J.—I.   Appellees have interposed motions to strike appellant's abstract from the files, and to affirm the decree, on the ground that the abstract has no names of attorneys appended thereto, and does not purport to contain all the evidence; and also to strike from the files an amended abstract, in which appellant seeks to cure these alleged errors, and a reply filed at the same time.   Appellant's abstract purports on its face to be an abstract of the evidence in this case, and the names of the attorneys for appellant are given in the usual way on the first page.    There is no rule requiring that the names of counsel be attached at the end of an abstract, and the motion to strike on this ground must be overruled.   It is no longer necessary, in order to secure trial *de novo* in this court, that the appellant shall formally allege in his abstract that it is an abstract of all the evidence, and that the evidence was preserved in the proper manner.   *Kirchman v. Coal Co.,* 112 Iowa, 668.  Moreover, the alleged defects are cured by the amendment, and although it and the reply were filed two days after the time required by the rules, we do not strike out, in such cases, on motion, where no prejudice appears to have resulted to the opposite party.   The case is fully argued, and there is no reason why it should not be considered on its merits.

II.   Appellees insisted in the lower court, and still contend here, that appellant cannot have his right as an heir entitled to inherit by reason of illegitimate parentage and recognition determined in a partition suit, and that he must first establish in some other proceeding the fact of heirship.   It is not questioned that one who claims as legitimate heir may bring suit for partition against other heirs in possession of the real property of the common ancestor, and establish his right by proof that he is an heir.

An illegitimate child, when recognized as required by statute, is an heir in the same sense as a legitimate child. In each case the plaintiff must show his relationship to the ancestor, and, further, the illegitimate must show recognition. "For the purpose of inheritance, an illegitimate child, when recognized, stands on precisely the same footing as if it were legitimate. If the father dies intestate, both inherit, and such right can only be cut off by the will of the father, which is equally effective as to both classes of children." *Milburn v. Milburn,* 60 Iowa, 411. In this case the question was whether the subsequent birth and recognition of an illegitimate child would have the same effect as the subsequent birth of a legitimate child in revoking a will, and it was held that it would. We think the reasoning is fully applicable here. See, also, *McGuire v. Brown,* 41 Iowa, 650; *Johnson v. Bodine,* 108 Iowa, 594; *Investment Co. v. Caldwell,* 152 U. S. 65 (14 Sup. Ct. Rep. 504, 38 L. Ed. 356). We see no reason why plaintiff may not in this proceeding allege and prove, if he can, that he is the illegitimate son of Willian Alston, and that he has been recognized as required by statute to entitle him to inherit.

III. Prior to the adoption of the Code of 1851, the rule of the common law was in force in this state precluding inheritance by illegitimates from the father under any circumstances, and in that Code provisions similar to those now in force were incorporated, by which illegitimates might inherit from the father when recognized by him as his children, as there specified. These provisions have been substantially in force ever since. Plaintiff was born some years prior to the adoption of the Code of 1851, and some of the evidence relating to recognition refers to acts and conversations of William Alston prior to the adoption of the Code. Appellees insist that evidence of recognition must be strictly limited to acts and conversations subsequent to the time when such recognition would by law entitle the plaintiff, if an illegitimate son, to inherit. For this contention they cite the case of *Hartinger v. Ferring* (C. C.)

24 Fed. Rep. 15, in which the circuit court of the United States for the Northern district of Iowa reached the conclusion contended for; but we think this position is untenable. The legislature having the right to determine the rules of inheritance in accordance with which the property of persons subsequently dying shall be distributed, may provide as it sees fit with reference to who shall be heirs. There is no vested right to inherit until the death of the ancestor. It may therefore be provided that illegitimate children already born and recognized shall be considered heirs. The recognition contemplated by the statute is not recognition as prospective heir, but recognition as an illegitimate child; and whoever fulfills the conditions of the statute as to the right to inherit, existing at the time of the death of the ancestor, is entitled to inherit under the statute. There is nothing in the language indicating that it was to be applicable to such recognition as should afterwards be made. It describes a class of persons, and declares that persons of that description shall inherit; it does not refer to or create a status. It is prospective in its operation as to the right, but there is nothing to suggest that persons of the class described—that is, illegitimates already recognized—shall not inherit under it. It would be as just and reasonable to limit the provisions of the statute to illegitimates afterwards begotten and born as to so limit it to illegitimates aferwards recognized, and it would be just as reasonable in the one case as in the other to argue that to adopt a construction making it applicable to existing illegitimate children would be to give the statute a retrospective effect. But it is not contended by appellees that the statute is to be limited to illegitimates subsequently begotten and born. The cases of *Brown v. Bellmarde,* 3 Kan. 35, and *Stevenson's Heirs v. Sullivant,* 5 Wheat. 207 5 L. Ed. 70), as well as in the case of *Rice v. Efford,* 3 Hen. & M. 225, on which the latter of these two cases is based, all relate to inheritance by illegitimates under a statute

passed after the death of the ancestor, and whatever language may have been used apparently supporting the decision in *Hartinger v. Ferring, supra,* must be regarded as pure dictum. *Van Horn v. Van Horn,* 107 Iowa, 247, was a case in which plaintiff, claiming to be an illegitimate born and recognized in New Jersey, sought to establish his right to inherit property in Iowa, and defendant contended that inasmuch as, by the laws of New Jersey, an illegitimate son could not inherit the property of the father, his birth and recognition in New Jersey would not entitle him to inherit under the laws of Iowa; but this court says: "The sole inquiry here is, is he [the plaintiff] entitled to inherit the real estate and personal property situated in this state, under the facts presented in evidence? Our conclusion is that the laws of New Jersey are wholly immaterial to this inquiry." Certainly there is no more reason for allowing proof of birth and recognition in a state where those facts do not entitle the illegitimate to inherit than for admitting proof of birth and recognition in Iowa prior to the time when the statutes of this state made those facts sufficient to entitle the illegitimate to inherit. We are of the opinion, therefore, that evidence of acts and conversations on the part of William Alston, tending to show recognition by him of plaintiff as his illegitimate child prior to the adoption of the Code of 1851, may be considered.

IV. Before discussing, however, the evidence of William Alston's recognition of plaintiff, it is necessary to consider what evidence, if any, there is as to paternity; for the defendants' counsel insist that, even though William Alston supposed plaintiff to be his son, still, if he was not in fact a son, then he could not inherit, and counsel object to much of the evidence with reference to paternity of plaintiff, on the ground that it is mere hearsay, and not admissible. But it is well settled that some evidence which would in general be excluded as hearsay is admissible on the subject of relationship. Prof. Greenleaf states that hearsay in regard to relationship is admitted in cases of

pedigree, the principal question in such cases being that of
the parentage or descent of the individual, and he says that,
"in order to ascertain this fact, it is material to know how he
[the person in question] was acknowledged and treated by
those who were interested in him or sustained towards him
any relations of blood or affinity."     And while he states
the rule in general as limiting evidence of declarations on
this subject to those of deceased persons who were related by
blood or marriage to the person in question, it is evident
that the relationship insisted upon is that which will give rise
to an interest justifying the assumption that the person who
made the declaration would know the fact by general repu-
tation in the family and among persons likely to be reliably
informed.     1 Greenleaf, Evidence, 103; and see Jones,
Evidence, section 316, and an article in 37 *Albany Law
Journal,* 130.     In a leading case on the subject, Lord Chan-
cellor Eldon says:     "Declarations in the family, descrip-
tions in wills, descriptions upon monuments, descrip-
tions in Bibles and registration books, are all admitted upon
the principle that they are natural effusions of a party who
must know the truth, and who speaks upon an occasion when
his mind stands in an even position, without any tempta-
tion to exceed or fall short of the truth;" and, further, that
the "tradition must be from persons having such a connec-
tion with the party to whom it relates that it is natural and
likely, from their domestic habits and connections, that they
are speaking the truth, and that they could not be mis-
taken."     *Whitelocke v. Baker,* 13 Ves. 514.     In another
case, Lord Chancellor Erskine held that the definite re-
lationship of the person who made the declaration to the per-
son about whose paternity it was made need not be estab-
lished.     "It is sufficient if he says, 'A. is his relation,' with-
out stating the particular degree, which, perhaps, he could
not tell if asked; but it is evidence, from the interest of
that person in knowing the family."     *Vowles v. Young,* 13
Ves. 140, 147.     And in this last case the declaration of a
husband as to the legitimacy or illegitimacy of his wife was

permitted to be shown. Declarations as to the paternity of
a child made by the father and mother in their lifetime may
be shown, and circumstances indicating a recognition of the
relationship on their part. *Goodright v. Moss,.* 2 Cowp.
591. The declarations of a member of the family or a rel-
ative are admissible, although such person cannot be pre-
sumed to have known of his own personal knowledge the
particular facts of which he speaks, and must have made
the statement upon information derived from others. *Jew-
ell's Lessees v. Jewell,* 1 How. 219, 231 (11 L. Ed. 108);
*Futter v. Randall,* 2 Moore & P. 20; *People v. Insurance
Co.,* 25 Wend. 205, 209; *Copes v. Pearce,* 7 Gill. 264; *Crau-
furd v. Blackburn,* 17 Md. 49 (77 Am. Dec. 323); *North-
rop v. Hale,* 76 Me. 306 (49 Am. Rep. 615). Of course,
facts which might be shown by proof of declarations of a
persons deceased may be shown by the testimony of the same
person living, so that a witness may testify as to who is his
father or as to his age, although, of course, he cannot know
the matters by personal knowledge. *Webb v. Richardson,*
42 Vt. 465; *Houlton v. Mantueffel,* 51 Minn. 185 (53 N.
W. Rep. 541); *Cheever v. Congdon,* 34 Mich. 296.

With these principles to guide us, and confining our-
selves to the consideration of direct testimony, and such hear-
say only as is authorized to be received by the well-settled
principles above announced, we find that the plain-
tiff is the son of Octavia Daniels, and was born in
December, 1843, at the home of her brother, in Jef-
ferson county, about 12 miles west of Fairfield; that not
long prior to this time she had been working in a hotel in
Fairfield; that William Alston was then residing in Fair-
field, and continued to reside there, substantially without
intermission, until the time of his death; that William Al-
ston and Octavia Daniels were acquainted with each other at
that time; that each of them were then unmarried; that Wil-
liam Alston intermarried with the mother of defendants soon
after the birth of plaintiff; that Octavia Daniels intermar-
ried with one Bradley in 1845, at Agency City, in an ad-

joining county, where she continued to reside until her death in 1881; that within a few months after his birth, and under an arrangement by William Alston for a consideration paid, plaintiff was taken to raise by Mr. and Mrs. De France, who lived about seven miles north of Fairfield; that plaintiff lived with the De Frances as a member of their family until the death of Mr. De France, and the marriage of Mrs. De France to one Hite, and with the Hites until the death of both of them; that he was recognized by his mother as her son, and was declared by her to be the son of William Alston; that Mr. and Mrs. De France declared him to be the son of William Alston; and that his half-sister, the daughter of his mother by her marriage with Bradley, knew him as her half-brother, and as the son of William Alston. With reference to the declarations of Mr. and Mrs. De France, they do not come strictly within the rule requiring such declarations to be by a relative by blood or marriage, but it was their family in which plaintiff was brought up, and we hold that their declarations are admissible by reason of such relationship. It is to be borne in mind that it is not the facts which declarants knew of their own knowledge alone that may be established by such declarations, but the facts of relationship and paternity, and that such declarations are admissible, although they relate only to matters of reputation in the family. It is to be borne in mind, also, that there is no possible question in regard to identity. The plaintiff from infancy was known as William D. Alston. He was enrolled by that name when, as a youth, he joined a church, and he continued to be known uninterruptedly by that name. There is no pretense that he was known as the son of Mr. and Mrs. De France. He continued to reside with his foster parents until their death, and afterwards in the neighborhood, until he was more than 30 years of age, and there are many witnesses who testify that they know him now as the same person whom they knew as the foster son of the De Frances. It seems to us that the facts are too numerous, and the evidence too strong, and

based on the direct testimony of too many witnesses, to be questioned. It is important also, as explaining lack of direct evidence of some important facts, that all the parties immediately concerned are dead,—William Alston, plaintiff's mother, this mother's brother and his wife, at whose home the child was born, the husband of the mother, and Mr. and Mrs. De France. The law does not refuse to receive admissible evidence simply because other evidence which would be more satisfactory, is unattainable. The very reason for admitting hearsay evidence on such occasions is that "it is the best evidence the nature of the case admits, and because greater evils are apprehended from the rejection of such evidence than its admission." *Jackson v. King,* 5 Cow. 237 (15 Am. Dec. 468). And see *Carter v. Montgomery,* 2 Tenn. Ch. 216, 227; *Fulkerson v. Holmes,* 117 U. S. 389, 397 (6 Sup. Ct. Rep. 780, 29 L. Ed. 915); *Eisenlord v. Clum,* 126 N. Y. 552 (27 N. E. 1024, 12 L. R. A. 836); *Johnston v. Todd,* 5 Beav. 597.

V.   By Code, section 3385, the illegitimate son, in order to inherit from his father, unless the paternity is proven during the father's life, must have been recognized by him as his child, and "such recognition must have been general and notorious, or else in writing." The last question for our consideration, then, is whether the evidence shows general public recognition by William Alston of plaintiff as his son. What is required is not that the father shall have recognized the illegitimate as entitled to inherit, but only that he shall have recognized him as his child. *Van Horn v. Van Horn,* 107 Iowa, 247; *Watson v. Richardson,* 110 Iowa, 673; *Crane v. Crane,* 31 Iowa, 296. Now, the evidence in this case shows practically without contradiction, that William Alston, on several occasions, visited the home of Mr. and Mrs. De France when the plaintiff was there as a child, spoke to him as his son, was addressed by him as a son would address a father, took special interest in him at a time when he was seriously sick, referred to him as his son

in converations with the half-sister and with others, and, finally, not many years before his death, executed and delivered to him a warranty deed for 120 acres of land for the expressed consideration of one dollar. It appears that William Alston was not a man inclined to be communicative, even to his friends, about his domestic affairs, and he very naturally did not speak without some occasion to do so of his illegitimate son; but it is significant that he knew that his son was called by that name, and that he never by any action, so far as is shown by the testimony of either plaintiff's or defendants' witnesses, repudiated the relationship. When spoken to in regard to plaintiff as his son, he never denied the fact, but on various occasions spoke with apparent interest and concern in regard to his welfare. Defendants' counsel contend that expressions attributed to William Alston may be explained on the ground of an interest in the plaintiff arising from some other cause than that of paternity, but it appears that on several occasions persons who were friends or acquaintances of William Alston spoke to him or joked him about plaintiff being his natural son, thus indicating to him that it was a matter of public comment; and, in view of these facts, acts and conversations on his part thereafter, evidencing an interest in the plaintiff, may properly be construed into a public and general recognition, although, standing alone and apart from the fact of this general belief as known to him, they would not require such an interpretation. But the decision of the case does not depend upon the construction of equivocal acts. There is direct evidence of unequivocal recognition.

Many witnesses were introduced by defendants, who testified that they were well acquainted with William Alston, and acquainted in Fairfield and the neighborhood, and that they never heard of William Alston having an illegitimate son; but it is important to notice that in nearly every case they were persons who were not acquainted with the plaintiff. The fact that William Alston did not speak to such persons in regard to the plaintiff as his son is not to

be wondered at, and does not tend to overcome the evidence introduced by plaintiff tending to show public and general recognition. With reference to similar evidence, this court has recently said that witnesses called to negative the fact of recognition were "acquaintances of the family, to whom he would not be likely to disclose his relations with this woman [the mother of the illegitimate child], and their evidence throws little light upon Comb's [the father's] relationship with her or her offspring." *Brown v. Iowa Legion of Honor,* 107 Iowa, 439, 444. In *Blair v. Howell,* 68 Iowa, 619, it is spoken of as a significant fact as bearing upon recognition that the illegitimate child whose recognition was in question in that case "had no other ostensible parentage, and Bowen well knew this, and knew that others knew it." And the court in that case says that Bowen's general bearing towards the child "being such as involved a recognition, it follows that the recognition was general." Without claiming that in all respects the acts of recognition in the case we now have before us were as conclusive as those referred to in the case just cited, we think that the view taken by the court of the evidence in that case is very applicable to this one. In *Watson v. Richardson,* 110 Iowa, 673, we denied to claimant the right to inherit on the ground that the evidence did not show a general recognition, but the acts of the putative father there relied upon were less persuasive in their character than those shown in this case; and the same may be said of *Markey v. Markey,* 108 Iowa, 373. In this case there is no reasonable ground to disbelieve the witnesses for plaintiff as to the material facts sought to be established. There are inconsistencies in their testimony in reference to other facts and circumstances which may be easily accounted for by the remoteness in time of the matters with reference to which they testify, without discredit to their truthfulness; and we may extend, as we do, equal credence to the testimony of defendants' witnesses, without finding that the credibility of the evidence of plaintiff's witnesses is, in any material respect, impaired. If

our conclusion were based upon the credit to be given to particular witnesses as to facts contradicted by other witnesses, we should feel impelled to give weight to the conclusions of the trial judge, before whom a considerable part of the testimony was taken in open court; but his finding for defendants was avowedly reached by the exclusion of a large part of the testimony as incompetent, because hearsay, whereas we find that much of the hearsay evidence was entitled to consideration, under the rule which we have already considered.   We therefore find that plaintiff is the son of William Alston, and that he was generally and notoriously recognized by him as such.—REVERSED.