JOHN MORGAN, Appellant, v. ANNA L. STRAND, KLAUS STRAND, LOTTA FARSELL, PETER FARSELL, JOHANNA KARLSSON, ALFRED KARLSSON, KAJSA JOHNSON WIGGE, CHRISTENA GUSTAFSON, CHARLES GUSTAFSON, MARY JOHNSON, ANDREW G. JOHNSON, FLORA JOHNSON, A. J. JOHNSON, IDA JOHNSON, NETTIE ERICKSON, ELMER ERICKSON, LAURA LARSON, SAMUEL LARSON, NORA JOHNSON, LEONARD JOHNSON, ANNA ANDERSON, ALBERT ANDERSON, MARY JOHNSON, ELLA JOHNSON, Appellants, and ALMA POULSON, Appellee.

**Bastards:** RECOGNITION: INHERITANCE. The evidence in partition proceedings is reviewed and held to show such recognition of an illegitimate child by a putative father as to entitle it to inherit from him.

*Appeal from Osceola District Court.*— HON. J. L. KENNEDY, Judge.

WEDNESDAY, FEBRUARY 13, 1907.

ACTION for the partition of a quarter section of land in Osceola county. The relief sought was denied, and the title quieted in the cross-petitioner, Alma Poulson. The other parties appealed.— *Affirmed.*

*W. C. Garberson* and *Parsons & Riniker,* for appellants.

*R. M. Hunter,* for appellee.

LADD, J.— Peter Johnson died in February, 1903, seised of a quarter section of land in Osceola county. He was unmarried, but left him surviving, six sisters and a brother and the children of a deceased brother. All are parties to this action, save one of said children, who conveyed

his interest in the land to the plaintiff. Alma Poulson, who was made defendant, admitted the relationship of the parties above referred to as alleged, but denied that they had any interest in the land. By way of cross-petition, she averred that she was an illegitimate daughter of deceased, begotten of one Hannah Swanson, since intermarried with Benjamin Poulson, and that she had been generally and notoriously recognized by deceased in his lifetime, and was therefore entitled to inherit the property as his sole heir. The evidence established that she was born in 1886, near Gibson City, Ill. Her parentage as alleged was conclusively established.

The difficult question to determine is whether deceased had recognized her as his daughter generally and notoriously, within the meaning of the statute declaring that illegitimates so recognized shall inherit from the father. Bastardy proceedings were begun against him immediately before Christmas, 1885, which his attorney settled by the payment for him of $100 to the mother. In the spring following he moved to Melvin, in Osceola county, this State. The evidence satisfactorily shows that the people in the neighborhood in which he lived generally understood that he had a child back in Illinois, though several, as is always true in such cases, testified that, though they had been acquainted with him many years, had not heard of such fact. He was a person not given to talk concerning his own affairs, and, while he did not much discuss this relationship, he seldom mentioned his brothers and sisters; but he made no secret of having a child back in Illinois. This statement he made to several persons, and once or twice publicly in the presence of crews operating threshing machines. To Mrs. Borg at Gibson City, Ill., he acknowledged that he was father of Hannah Swanson's unborn child, said he did not like her well enough to marry her, but would like to have the child and care for it. To A. Wachtel he said, in presence of several persons, some ten or twelve years before his death,

that he had a child.   To H. S. Hopfe he repeated three
times that he had a girl back in Illinois, and explained hav-
ing adjusted his trouble about it and mentioned a relative
of hers living near him, one Wilson, who was shown by other
evidence to have married the cousin of claimant's mother.
To Frank Knapp he related some fifteen or eighteen years
before the trial that he had a daughter back in Illinois and
had had trouble about getting its mother in a fix.   To John
Benz, who came from Gibson City, Ill., he gave an account
of his trouble with a woman back there; that it had cost
him a good deal to settle it; that he had a child as a result;
and that the woman had gotten married again.   To Peter
Wachtel he told of having a child back in Illinois, and that
he had had difficulty with its mother.   To Joseph Wachtel he
said at two different times that he had a daughter in Illinois,
and this witness heard him so declare to a crew operating
a threshing outfit.   To Johannes Hoeper he gave an account
of his trouble as late as in 1902, and related that he had
returned to see the mother of his child, and, as they con-
cluded not to marry, had settled with her for $100.   Two
witnesses testified that it was the general talk in the com-
munity that he had a child back in Illinois, and others with
equal facilities for knowing said they had never heard of
such a thing.   The record leaves little doubt of a general
and notorious recognition that he did have a child "back in
Illinois."   Doubtless, he did not tell every one he talked
with; but, whenever the subject was broached, he freely
stated his connection with such a child.   But was such child
sufficiently identified as the cross-petitioner?

The record contains no direct evidence that deceased
ever saw her, but it conclusively establishes the fact that he
was her father; and his reference to Wilson, living near his
home as a relative of the child's mother, and his account of
the settlement to several witnesses as it actually occurred
with Hannah Swanson, and to one as with a woman near
Gibson City, Ill., coupled with the fact that he came from

there to Osceola county, in the absence of intimation of his being involved in any similar transaction, satisfactorily point out the claimant as the child or girl " back in Illinois " to which he so often referred. The recognition contemplated by the statute is, of the relationship with a particular person as his offspring or by the putative father, and, if the child is sufficiently identified without its name being mentioned or seeing it, neither of these are essential. It was noted in *Blair v. Howell,* 68 Iowa, 619, that the word " general " is not synonymous with " universal," and that " notorious " might be synonymous with " open," and the court there held that these terms should be construed with reference to the circumstances and surroundings of the parties. To the same effect, see *Van Horn v. Van Horn,* 107 Iowa, 247. In *Watson v. Richardson,* 110 Iowa, 673, the definition of " notorious " by Webster as: " Generally known and talked of by the public; universally believed to be true; manifest to the world "— was quoted with approval, and it was there said that: " Both of these words are used in the statute with the design of emphasizing the thought that the understanding of the father's recognition should be as extensive as the immediate community of his residence and within the common knowledge of the public." In that case, as well as in *Markey v. Markey,* 108 Iowa, 373, the evidence was such as to indicate no recognition for a long period of time, and in the former the evidence even then was inconsistent with the established facts of the case. This was pointed out in *Alston v. Alston,* 114 Iowa, 29, where the testimony of the witnesses to recognition was entirely consistent with the proven facts of the case, and not necessarily in conflict with that of other witnesses, and it was there held that the recognition was sufficient to comply with the statute.

The evidence before us indicates that Peter Johnson declared that he had a child " back in Illinois " upon every occasion when the question was raised, and his statements in connection with the circumstances proven identify the

claimant as such child. This was such general recognition of her as the circumstances permitted. She was residing in another State, and more definite reference to her could not be expected, and the evidence fairly established that his acknowledgment of having such a child was generally understood in the neighborhood. While the evidence is not strong, it is sufficient to comply with the statute. He lived in a sparsely settled community, and did not have the extensive acquaintance of one otherwise situated; but to such acquaintances as he had he freely talked of this child. In this particular community in which he lived his recognition was both general and notorious. The decree quieting title in the claimant has our approval.— *Affirmed.*