FRANK M. TOUT, Appellee, v. MARY E. WOODIN and Others, Appellants.

**Parent and child:** ILLEGITIMATE RELATIONSHIP: EVIDENCE. In this action to establish plaintiff's alleged rights as an illegitimate son and heir to decedent's estate, the evidence is reviewed and held to show that plaintiff was the son of decedent.

**Same:** RECOGNITION: EVIDENCE. The recognition by a putative father of his illegitimate child, to be such as to entitle the child to inherit, must be general and notorious; but it need not have been universal or made known to all, or to a majority of the community. It is sufficient if the father frankly admitted the relationship whenever there was occasion for him to speak, and made no effort to conceal the same, even though many of his friends and acquaintances had no knowledge of such recognition. Evidence held to show recognition.

**Same:** PATERNITY: EVIDENCE. Statements of the mother of an illegitimate child, made at the time of its birth and repeatedly thereafter, that decedent was the father of her child, were admissible as tending to show its paternity.

*Appeal from Keokuk District Court.*—HON. W. G. CLEMENTS, Judge.

FRIDAY, OCTOBER 25, 1912.

PLAINTIFF claims to be the illegitimate son of Evan H. Skillman, deceased, who in his lifetime recognized such relationship. Skillman died without will, and this action was begun to establish plaintiff's alleged rights as an heir of the estate. Decree as prayed, and defendants appeal. —*Affirmed.*

*Stockman & Baker,* and *J. A. Devitt,* for appellants.

*John O. Malcolm* and *Geo. C. True,* and *D. W. Hamilton,* for appellee.

WEAVER, J.—I.   The law applicable to cases of this class is not the subject of serious dispute between counsel, but, concerning its effect as applied to the case at bar, there is quite naturally a wide divergence of opinion. The evidence on part of the plaintiff tends to show that Evan H. Skillman was born in the year 1850, and, except for a period (as hereinafter noted) when he was under restraint in a hospital for the insane, he lived quite continuously at Sigourney, Iowa. In the year 1894 he married one Emma Runyon, who died without issue. Skillman died without direct heirs, unless plaintiff is adjudged entitled to stand in that relation. The defendants are the collateral relatives of the deceased, who will inherit the estate if plaintiff's claim is rejected. That plaintiff is the son of one Laura Belle Myers, an unmarried woman, and was born in Sigourney in 1878, appears to be conceded. When about six months old, plaintiff was adopted by one Basil Tout, and was thereafter known by the name of the adopting parent. About the time of his adoption, Miss Myers is said to have married one Hall and removed from Sigourney, but whether such marriage took place is not certain. She is not now living. In support of the claim that Skillman was father of the child, the testimony of several witnesses was offered

*[margin note: 1. PARENT AND CHILD: illegitimate relationship: evidence.]*

tending to show that Skillman visited and waited upon Miss Myers for a considerable period before her pregnant condition became known to her friends and neighbors. That she frequently charged Skillman with the paternity of the boy is also shown. If witnesses are to be believed, he spoke of plaintiff as his child or his boy to the mother of Miss Myers, to his associates, and to his acquaintances and friends McClenahan, Gears, McCoy, Grimes, Covey, Lyons, Webb, Lowe, Newkirk, Osborne, Benton, McConnell, Crowe, Bootin, Brown and Reiner. To others he said he had a child—or had a boy—over at What Cheer, the place where Tout resided, but did not always name or point him out. To other witnesses he said he would have married Belle (plaintiff's mother) if it had not been for his folks. It appears that, when the pregnant condition of Miss Myers became known, she went or was sent to the county poor farm, where she remained until she recovered from her confinement. Members of the family then in charge of the farm testify that, after plaintiff was born, Skillman visited the mother while she was still in bed, held the child in his arms, and brought or sent goods or supplies for its use. Another witness, a woman residing in Sigourney, testifies that after plaintiff had been adopted by Tout, and before his mother removed from Iowa, the latter, returning to Sigourney from a neighboring town, was met at the station by Skillman, who brought her to the witness' home, where, at his request, she was kept overnight. In speaking of her to the witness he called her "my girl." On the following morning he went away with her. Other circumstances are relied upon to corroborate or strengthen plaintiff's theory of the facts, but we think it unnecessary to pursue the recitation any farther. In defense, two of Skillman's sisters, defendants herein, deny that the deceased at any time in conversation with them or in their presence ever said or admitted that he was plaintiff's father. In further pursuance of the same line of testimony witnesses

Schipper, Funk, Kleinschmidt, Namur, Ford, Neas, Lewis, Dern, Pinkerton, Mackey, Kerr, Franken, Johnston, Linder, Jessup, Carr, Paff, Rice, and Goldthwait, business men, professional men, farmers, and others who knew Skillman in his lifetime, and had more or less intimate acquaintance with him, all testify that they never heard him admit the paternity of the child. But one witness, North, ever heard him deny that the child was his. It was also shown that in June, 1894, Skillman was adjudged a proper subject for treatment in the hospital for the insane, and was there confined a short time, when he returned home. In the following year he was recommitted to the hospital, where he remained substantially all the time until his death in 1908. He left an estate valued at from $20,000 to $25,000, subject to mortgage and other indebtedness not exceeding $4,000.

This, stated as briefly as possible, is the record presented, and it is apparent that the central question upon which our decision must turn is one of fact. Is the evidence sufficient to establish the fact that the plaintiff is the son of Evan H. Skillman, deceased? If such paternity has been proven, we then have to inquire whether Skillman's alleged recognition of that relation is shown to be general and notorious within the meaning of the statute. Code, section 3385. That the trial court correctly found the alleged paternity satisfactorily proven we have little doubt. All the evidence given on the subject bears in that direction. The defendants offer no evidence to the contrary, but ask the court to infer, or rather to indulge in the suspicion, that because of the young woman's subsequent relations with Hall, he must have been the father of the child. This we can not do upon such slight foundation. The only debatable proposition that is vital to the case is upon the question of the sufficiency of the recognition.

II. As has already been said, it must have been general and notorious. But to fill this measure it is not re-

quired that the recognition should have been universal or
made known to all or to a majority of the
community. *Van Horn v. Van Horn,* 107
Iowa, 247; *Blair v. Howell,* 68 Iowa, 619.
It can not be supposed that in any case a putative father,
however sincere his purpose to recognize an illegitimate child,
nor however frankly he may admit the relationship when
there is occasion for him to speak of it at all, will make
it the subject of voluntary rehearsal to every person whom
he meets, or force the unpleasant subject into conversation
with others. If in his intercourse with neighbors, asso-
ciates, and friends he makes no attempt to conceal the re-
lationship he bears to the child, but acknowledges it openly
whenever any reference to the subject is made, and this
recognition is so often repeated to different people as to
evince his willingness that all who care to know the truth
may understand that he admits himself the father of the
child, we regard it as sufficiently general for the purposes
of the statutory rule, although many of his acquaintances
may never have heard him mention the matter. It appears
quite clearly that at the time of the birth of plaintiff and
for years thereafter Skillman was very generally reputed
to be his father.

  It is true, as counsel say, that such paternity
can not be established by hearsay or rumor or current
scandal. The circumstance of such general repute may,
however, be of some significance, not as in itself proving
the relationship, but as bearing upon the effect to be given
the testimony of defendant's witnesses, who say they knew
Skillman well, and never heard him mention the matter;
for if such story was being publicly bandied about in the
community where he lived, and he took no pains to deny it
to the friends and acquaintances whose good opinion he
would be likely to covet, does it not lend some weight to
the affirmative testimony as to his acknowledgment of the
child? See *Alston v. Alston,* 114 Iowa, 29. But, even

2. SAME:
recognition:
evidence.

if we disregard the evidence of repute as being incompetent
for any purpose, we must still say that the clear weight
of the competent testimony is with the plaintiff.   It may
be admitted that the story told by one or two witnesses has
a somewhat strained and unnatural sound, and, if the case
rested upon this alone, we might perhaps reach a different
conclusion.   But no attempt has been made to impeach the
credibility of the twenty or more persons who testify to
Skillman's acknowledgment of the relationship.   So far as
appears, none of them had any interest in the controversy,
and the court below, having them present at the trial and
under its immediate observation, has accepted their testi-
mony as true.   Conceding their credibility, and we can not
consistently do otherwise in view of the record before us, the
decree entered below was inevitable.   The acknowledgment
was not a single or isolated admission.   No two of the wit-
nesses testify to the same admission.   The statements of
Skillman were not made in confidence, or as a secret to be
concealed by the persons to whom they were made but
openly and without apparent reserve, and they seem to have
been made on so many and different occasions, and with
a single instance of denial on his part, that we are forced
to hold the recognition to be both general and notorious.
Against this evidence defendants offer nothing whatever,
except 'an array of witnesses who knew Skillman, and who
say that he never made any such acknowledgment to them
or in their hearing.   Conceding that this evidence was
competent, we think it must be said to be both weak and
inconclusive.

Counsel have called our attention to census statistics
showing Sigourney at the time in question to have been a
town of from 1,300 to 2,000 inhabitants.   The purpose of
this reference, we assume, is to contrast the number of
witnesses testifying for the plaintiff, as compared with the
population of the town, and thereby draw the conclusion
that the recognition was neither general nor notorious.   The

argument is unsound. To make his case plaintiff was not bound, as we have already said, to show that the admissions had been made to every person in the community or to a majority of such persons. If Skillman made the acknowledgment openly and not in secret, and to so many different persons and upon so many different occasions that we may say he made it public property, and manifested a willingness that all who cared to know or inquire should understand that he recognized the paternity of the child, the showing of these facts is all that is required to sustain the decree appealed from.

Our attention has been called by counsel on both sides to the adjudicated cases, but we think it unnecessary to attempt their extended review. Cases of this character turn so largely upon varying states of fact that precedents directly in point are rare, while the essential rules of law applicable to such issues are the subject of little, if any, dispute. Our construction of the law and treatment of the facts finds more or less support in *Blair v. Howell,* 68 Iowa, 619; *Alston v. Alston,* 114 Iowa, 29; *Morgan v. Strand,* 133 Iowa, 299; *Van Horn v. Van Horn,* 107 Iowa, 247. Upon the question of general and notorious recognition, it is said in the Van Horn case that "general" is not equivalent to universal, but means rather "extensive, though not universal, and that 'notorious' is synonomous with 'open' and should be construed with reference to the circumstances and surroundings of the parties." Again, it has been said that, where the general bearing of the putative father toward the child "is such as to involve a recognition, it follows that the recognition was general." *Blair v. Howell, supra; Alston v. Alston, supra.* Upon the same subject we said in *Morgan v. Strand, supra:* "The record leaves little doubt of a general and notorious recognition that he did have a child back in Illinois. Doubtless he did not tell every one he talked with, but whenever the subject was broached he freely stated his connection with

such child." Measured by the standard approved in these cases, the plaintiff's recognition by Skillman was clearly established.

III. The court permitted plaintiff to prove that at the time of his birth and repeatedly thereafter his mother stated to witnesses that Skillman was the father of her child. Of this ruling complaint is made. The same objection was made in the *Alston* case, but we held it not well taken, saying: "Declarations as to the paternity of a child made by the father and mother in their lifetime may be shown, and circumstances indicating a recognition of the relationship on their part." Other items of evidence are urged upon our attention by the appellants, but in each and every instance they have only a remote and uncertain bearing upon the case and none of them are necessarily inconsistent with the truth of the plaintiff's claim. The preponderance of the evidence is largely with the plaintiff upon every material issue in the case.

3. SAME:
paternity:
evidence.

We find no reason to disturb the conclusion announced by the court below, and the decree appealed from is therefore—*Affirmed.*