[Civ. No. 5510. Third Appellate District.—January 15, 1936.]

In the Matter of the Estate of G. E. PURCELL, Deceased. IDA MAY HOWELL, Appellant, v. HARRIETT J. JONES, Respondent.

Mannon & Brazier for Appellant.

Lilburn Gibson for Respondent.

THOMPSON, J.—This is an appeal from a judgment which was made pursuant to section 452 of the Probate Code revoking the letters of administration previously issued to Ida May Howell, the sister of George E. Purcell, deceased, and granting letters of administration of his estate to Harriett J. Jones, the daughter of said deceased. In effect the court found that Harriett J. Jones was the illegitimate daughter of the deceased and that she was legally adopted by

him in his lifetime pursuant to the provisions of section 230 of the Civil Code, constituting her his heir and giving her prior right to letters of administration of his estate over his sister.

The chief issue on this appeal is an alleged failure to prove that the petitioner is an illegitimate daughter of the deceased, for lack of evidence of the identity of her mother and for failure to prove that she may not have been conceived in lawful wedlock or that her mother was unmarried.

There is a sharp conflict of evidence, but we are of the opinion there is ample proof to support all of the necessary elements of the illegitimacy and of the adoption of the petitioner under the provisions of section 230 of the Civil Code.

George E. Purcell died intestate in Mendocino County September 23, 1934, possessed of real and personal property of the value of $4,300. Upon application therefor, letters of administration of his estate were duly issued to Ida May Howell, surviving sister of the deceased, on October 24, 1934. November 13, 1934, Harriett J. Jones filed her petition in said estate under the provisions of section 452 of the Probate Code, asking for revocation of the letters of administration previously issued to Ida May Howell, and requesting that letters be granted to her as the daughter of the deceased. Upon the hearing of this petition it appears that George E. Purcell and Frances Jones were married prior to 1898 and lived as husband and wife in Mendocino County until the death of his wife in 1933. There were no children born as the issue of that marriage. In 1900 and for at least a year thereafter, there were living in the household of Mr. and Mrs. Purcell her two sisters, Annie and Susie. Annie was previously married to a man by the name of Fish. In 1903 she married John Travis. There is no evidence that Susie was ever married. She retained her maiden name of Susie Jones. She was physically and mentally deficient. She was afflicted with occasional epileptic fits. She was characterized as feeble-minded. She was later committed to the state Home for Feeble-Minded Persons at Eldridge, where she died. Gertrude Yates testified that Mrs. Purcell told her that while Susie lived with the Purcell family during 1900, she and Susie went away for the summer. This was the summer during which Harriett was born. Mrs. Yates testified in that regard: "They lived in Covelo but [Mrs. Purcell] led me to

believe she had her sister for the summer somewhere, and I don't know where.'' It appears that later Susie was not in good favor in the Purcell family. Mr. Tracy testified in that regard: ''She [Susie] was a person we didn't show any disposition to be friendly with because they didn't seem to want you to be friendly to her, and [they] otherwise ignore(d) her presence.''

The petitioner testified she was born July 17, 1900. She had no actual knowledge regarding the identity of her parents. She supposed she was the daughter of Mr. and Mrs. Purcell. She was always treated by them as their daughter. She was known by no other name than that of Harriett J. Purcell until she married. She was referred to by both of them as their daughter. She lived in their household as their daughter until, at the age of sixteen years, she married a man by the name of Jones, who was not related to Mrs. Purcell's family, although he bore the same name. She was educated, clothed, fed and cared for by the Purcells in every respect as though she were their daughter.

Mr. Tracy, a banker of Ukiah, testified that he had known Mr. and Mrs. Purcell ever since the spring of 1900; that Mr. Purcell took up a government claim near the one which he owned at Westport; they were always the best of friends. He frequently visited in their home. He testified that ''when they were living in the mountains'' Mrs. Purcell's mother and her sisters Annie and Susie were living with them; that ''Susie made her home with Frances [Purcell].'' Soon after they located on the mountain claim, Mrs. Purcell went away and brought Harriett to their home as a ''baby in her arms''. Edith Walters also testified that Mr. Purcell told her in the summer of 1900, ''my wife has gone to the city to get a little girl to raise''. Mr. Tracy testified that the baby was brought to their home by Mrs. Purcell when she ''returned from San Francisco. . . . It strikes me it was summer [when the baby arrived at their home]. . . . I would think it was in the neighborhood of three weeks or a month old. . . . That was in the summer of 1900.'' He asserted that Mrs. Purcell said that Hattie was ''their child''. Years later Mrs. Purcell made a will which she left with their friend, Mr. Tracy. By its terms she devised all of her property to her husband. After her death in 1933, Mr. Tracy handed the will to Mr. Purcell, who noticed that disposition of the property by the

terms of the will and remarked to Tracy that it was all right "as she [Hattie] was his daughter". Mrs. Tracy, who formerly taught school at Twin Rocks near the Purcell home, and afterwards married Mr. Tracy, also knew the Purcells intimately. She frequently talked with them. She testified that Mrs. Purcell often said "Hattie is ours", and that Mr. Purcell often referred to her as "my daughter". When Hattie married in 1916, Mr. Purcell was disappointed and said to Mrs. Tracy: "It hurts me to have *my own daughter* marry that fellow." He frequently called her "his daughter" in the presence of strangers to the family. Seven old-time friends of the family testified they had heard Mr. Purcell say that Harriett was "his daughter" and "his own child" and similar acknowledgments of his paternity of the child. Gertrude Yates, who had known the Purcell family for nineteen years, and who frequently visited with them, testified that once when she called there with Mrs. Bunker, Mrs. Purcell told them that Hattie was not her child. Upon further inquiry, she added, "No, she is Mr. Purcell's, but not mine. . . . Being she was her own sister's child and Mr. Purcell's, she felt like she should take the child and raise it and do what she could by it." She identified the sister whom she designated as the mother of Harriett, as Susie Jones, who lived in their household in the year 1900. She apologized for her conduct by explaining that Susie "was not a very bright woman through sickness or something and it left her kind of feeble-minded". She repeatedly said that Hattie was not her own child, and, on the contrary, that she was the daughter of "my own sister and Mr. Purcell. . . . Q. Did she tell you whether she knew that Hattie was an illegitimate child at the time she took her into their home? A. Yes, that she was Mr. Purcell's child and her sister's."

The foregoing evidence furnishes adequate proof that Harriett J. Jones is the illegitimate daughter of George E. Purcell and Susan Jones, the unmarried sister of Mrs. Purcell, and that she was publicly acknowledged by Mr. Purcell as his daughter, and received as his child into his home and family with the consent of his wife Frances; that she was treated by them in every way as if she were their legitimate child, and that she thereby became adopted, legitimated and entitled to inherit her father's property as an heir at law,

under the provisions of section 230 of the Civil Code. That section provides:

"The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth."

It was competent for neighbors and friends of the Purcell family to testify to declarations of either Mr. or Mrs. Purcell regarding the paternity of Harriett J. Jones. (Sec. 1852, Code Civ. Proc.; sec. 1870, subd. 4, Code Civ. Proc.; *Estate of Heaton*, 135 Cal. 385 [67 Pac. 321]; *Estate of Flood*, 217 Cal. 763, 782 [21 Pac. (2d) 579]; Jones, Evidence in Civil Cases, 3d ed., p. 472, sec. 312.) In the Heaton case above cited, on a contest over the application for letters of administration of the estate of Warren D. Heaton, deceased, by Jennie M. Heaton, who claimed to be the illegitimate daughter of the deceased, who was adopted under the provisions of section 230 of the Civil Code, the admissions in evidence of declarations of Mr. Heaton and his wife, whom he subsequently married, were received on the ground that such admissions constitute an exception to the general rule of evidence and render competent the admissions of a deceased member of the family regarding the pedigree of a member of that family. This rule of evidence is recognized by section 1852 of the Code of Civil Procedure, which provides:

"The declaration, act, or omission of a member of a family who is a decedent, or out of the jurisdiction, is also admissible as evidence of common reputation, in cases where, *on questions of pedigree*, such reputation is admissible."

In the case of *Estate of Flood, supra,* it was also held that not only were the admissions of the alleged father of an illegitimate daughter, and of his wife, admissible, on the subject of pedigree, but that the declarations of the mother, the brother and the sister of Mrs. Flood, being related to the father of the child by marriage, were also admissible under the provisions of section 1870, subdivision 4, of the Code of Civil Procedure. Evidence of the declarations of Mrs. Purcell in the present case to the effect that Hattie was the daughter of her husband and that she was not her own daughter, and the further statement that Susie, the sister of

Mrs. Purcell, was the mother of Harriett, were competent on the question of pedigree.

It is true that "there is no presumption of law more firmly established and founded on sounder morality and more convincing reason than the presumption that children *born in wedlock* are legitimate". (1 Jones' Commentaries on Evidence, 2d ed., p. 118, sec. 64.) But this rule does not apply in civil cases in the absence of proof that the child is born in lawful wedlock, so as to require the affirmative proof of the identity of the mother of the ·alleged illegitimate child and evidence precluding the possibility that she was not married at the time the child was conceived or during the period of normal gestation, provided the illegitimacy of the child is otherwise shown. In the present case the evidence is conclusive that George E. Purcell was married and lived with his wife Frances during the entire period of gestation and for more than a year prior to the birth of Harriett. He admitted that she was his daughter, and his wife declared that Harriett was not her child. Assuming those statements to be true, it necessarily follows that she was the illegitimate child of Mr. Purcell, regardless of who her mother may have been. But, even if the rule contended for by the appellant be correct that there is a presumption that her mother may have been married and living under such circumstances that the law will presume the child to have been born in lawful wedlock, that contingency is refuted by the testimony in this case. Mrs. Purcell declared that Harriett was the daughter of Mr. Purcell and of her own sister, Susie, who then lived in their home under her maiden name of Jones, and that the inmates of their home then consisted of only herself, her husband and her two sisters Annie and Susie. No other man was a member of that household. Susie was in the custody of her sister, Mrs. Purcell, until she was later committed to the Sonoma State Home for Feeble-Minded Persons at Eldridge, where she subsequently died. In the absence of proof to the contrary, this furnishes ample evidence that Susie, the mother of Harriett, was an unmarried woman, and refutes the theory that she may have been born in lawful wedlock.

It is true that before the declarations of Mrs. Purcell could be received in evidence regarding the pedigree of Harriett, preliminary proof that she was a member of the family involved, must be first established. (*Estate of Hart-*

*man,* 157 Cal. 206, 210 [107 Pac. 105, 21 Ann. Cas. 1302, 36 L. R. A. (N. S.) 530] ; 3 Jones' Commentaries on Evidence, 2d ed., p. 2081, sec. 1132; 2 Wigmore on Evidence, p. 1853, sec. 1490.) The fact that Mrs. Purcell was the wife and a member of the family of George E. Purcell, and that Harriett was also a member of that family was conclusively established by the testimony of numerous friends and neighbors, independently of her evidence. That rule of evidence was fully complied with.

There appears to be no reasonable doubt that Harriett is the illegitimate daughter of the decedent, George E. Purcell, that her mother was Susie Jones, the unmarried sister of Mrs. Purcell, and that she is entitled to letters of administration as the duly adopted child under the provisions of section 230 of the Civil Code, and as such is entitled to inherit her father's estate as his heir at law.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 14, 1936.