286 P.2d 329

In the Matter of the ESTATE of Herman STONE, also known as H. A. Stone, or Herman A. Stone or Herman A. Schaible, deceased.

Lawton S. SCHAIBLE, Claimant-Appellant,

v.

R. W. HELLER, Administrator with Will Annexed; Harley Moeckel and Bonnie Moeckel, and Meryl Moeckel, Guardian ad litem for said Harley Moeckel and Bonnie Moeckel, Respondents.

No. 8124.

Supreme Court of Idaho.
July 18, 1955.

Cox, Ware & Stellmon, Lewiston, for appellant.

Paul W. Hyatt, Lewiston, Swayne & McNichols, Orofino, for respondents.

KEETON, Justice.

Herman A. Schaible, also known as H. A. and Herman A. Stone, died testate in Clearwater County on March 19, 1951. By the terms of his will, dated November 18, 1939, filed and admitted to probate, his estate is devised and bequeathed to two children of a nephew in equal shares. Appellant Lawton S. Schaible filed an answer to the petition and alleged that he is the son and sole and only heir of the deceased and entitled to inherit all of the estate.

A final account and petition for distribution were filed by the administrator with the will annexed, to which petition appellant filed written objections and again alleged that he is the son and sole and only heir of the deceased; that by the provisions of Section 14-320 I.C. the estate should be distributed as though deceased died intestate.

The probate court by decree distributed deceased's estate in accordance with the terms of the will. From the decree so entered appellant appealed to the district court where a trial was had before a jury. The trial judge at the conclusion of the evidence submitted two questions to the jury as follows: first, is Lawton Schaible (appellant) the illegitimate son of Herman Stone, also known as Herman Schaible? Second, did

Herman Stone, also known as Herman Schaible, in writing, signed in the presence of a competent witness, acknowledge himself to be the father of Lawton Schaible? The court instructed the jury that if the first question was answered in the negative, the second need not be answered. The jury answered the first question in the negative.

The court adopted the findings of the jury and in a decree affirmed the judgment of the probate court, and directed that the estate be distributed in accordance with the will of the deceased. From the decree Lawton S. Schaible appealed.

Testimony supports the conclusion that appellant was born July 9, 1903; that his mother's name was Cora Beckwith. He testified his father was Herman Schaible; that his father lived in Orofino during his lifetime, and was known as Herman or Herman A. Stone; that the deceased in 1947 told appellant he was his father. Other witnesses testified that deceased before coming to Idaho lived in or near Chelsea, Michigan; that in 1902 or early part of 1903 he was keeping company with Cora Beckwith; that she became pregnant and soon after the pregnancy occurred, deceased left town, inferentially to avoid arrest and prosecution. He thereafter, about 1905, settled in Orofino and adopted the name of Herman A. Stone. Within a few months after deceased left Michigan, Cora Beckwith gave birth to appellant. There was testimony that the child was named, or early in life called, Lawton Schaible. Some of respondents' witnesses

dispute this. Cora Beckwith died December 7, 1941.

A witness testified that in 1916 and 1917 Schaible visited Michigan and said to witness Earl Lowery in answer to an inquiry as to why deceased did not go and see Lawton Schaible's mother, said in substance that he would like that. Witness testified: "He said, 'I'd like to do something for the boy. After all, I am his father and I want to do something for him'."

Witnesses testified that in 1929 deceased returned again to Michigan, and in an Ann Arbor hotel stated that Lawton Schaible, appellant, is his son and named him as co-beneficiary in an application for insurance, saying "I want my son Lawton Schaible second beneficiary."

Four witnesses testified in substance that deceased told them, or acknowledged to them, that appellant is his son. Other witnesses testified to a correspondence between Cora Beckwith and deceased while he was living in Idaho, and offered testimony that appellant's mother expected to come to Idaho and marry deceased. The offer of proof was rejected.

In January, 1946, and again in October, 1949, appellant wrote two several letters to deceased from Michigan, addressed him as "Dad" and signed the letters "Your son, Lawton", and "Your son, Lawton S. Schaible". In answer to these letters deceased neither denied nor affirmed that he was the father of appellant. Other corroborating

evidence to support appellant's claim that he is deceased's son was introduced or offered.

Respondents called five witnesses, personal and business acquaintances of deceased, who, over objection, were permitted to testify that deceased never told them he had a son. None of such witnesses testified that deceased denied the relationship, or that there had been any conversations between them, or any of them, and deceased, relative to the relationship of claimant and deceased, if any.

In assignments of error appellant challenges the sufficiency of the evidence to support the decree and affirmatively states that the findings and decree entered are contrary to the undisputed facts; contends that the court should have found the undisputed testimony proves conclusively that appellant is the illegitimate child of deceased Herman Schaible and Cora Beckwith; that such acknowledgment was made in writing before a witness, or witnesses, in an application for a life insurance policy in 1929. The writing was not produced. Secondary evidence was received tending to prove its contents.

Appellant also assigns as error the sustaining of objections to certain offered evidence; permitting other witnesses, over objection to testify that deceased never mentioned having a child or son; and limitation of cross-examination.

In the proceedings taken appellant was asked: "Did your mother ever tell you who your father was? A. Yes. Q. What did she tell you in this regard?" The question was objected to on the ground the testimony is barred by Section 9–202, subd. 3, I.C., which disqualifies certain persons from testifying upon a claim or demand against the estate of a deceased person as to any matter of fact occurring before the death of such deceased.

The present proceeding in which appellant asserts that he is the son of deceased is not a claim or demand against the estate of a deceased person within the meaning of the statute. The right here asserted could not be enforced against the deceased in his lifetime. The Statute, Section 9–202 subd. 3, I.C., by its terms does not prevent an heir from asserting his relationship and right to inherit and to testify in support of such right.

For a discussion and citations of authority on what constitutes a claim or demand against an estate to call for the operation of the statutory rules respecting incompetency of a witness to testify, see 70 C.J. 218, Sec. 280; 58 Am.Jur. 149, Sec. 218.

Respondents contend that the testimony was properly excluded under the hearsay rule.

A well-recognized exception to the hearsay rule exists in respects of proof of matters of family history, relationship and pedigree. Hilliker v. Thorndale, 295 Ky. 148, 173 S.W.2d 977; Wigmore on Evidence, 3rd Ed., v. 5, p. 298, Sec. 1483, et seq. and p. 315, Sec. 1492; 20 Am.Jur. 409, Sec.

468; 31 C.J.S., Evidence, § 226, page 968; for collection of cases, see 31 A.L.R.2d 992.

In the matter before us appellant's mother died in 1941. The declarations of the deceased mother as to the paternity of her child (appellant) were made at a time when declarant (mother) had no motive to distort the truth, nor was there any litigation pending or then anticipated. The mother being deceased, the declarations are admissible. Carfa v. Albright, 39 Wash.2d 697, 237 P.2d 795, 31 A.L.R.2d 983; In re Frey's Estate, 207 Iowa 1229, 224 N.W. 597; Robertson v. Campbell, 168 Iowa 47, 147 N.W. 301; Tout v. Woodin, 157 Iowa 518, 137 N.W. 1001.

The witness Barth on direct examination was asked: "Is there any resemblance between Lawton Schaible [appellant] and Herman Schaible [deceased]? If so, just what is that resemblance?" The trial court sustained an objection made to the question on the ground of immateriality and incompetence, although the record shows that witness was well acquainted with appellant and deceased; also in substance that he and deceased were boys together and witness had known decedent practically all his life.

Evidence of physical resemblance between a child and the putative father which shows a similarity of specific traits or peculiarly marked physical characteristics is admissible where the paternity is material. Hilliker v. Thorndale, supra; In re Rowe's Estate, 172 Or. 293, 141 P.2d 832;

State v. Anderson, 63 Utah 171, 224 P. 442, 40 A.L.R. 94; In re O'Connor's Estate, 117 Neb. 636, 222 N.W. 57; In re Emery's Estate, 108 N.J.Eq. 601, 156 A. 130; Wigmore on Evidence, 3rd Ed., Vol. 1, 623, Sec. 166; See Anno. and collection of authorities, 40 A.L.R. 101(b).

The objection should have been overruled.

By deposition the witness Haines testified to having known claimant's mother and deceased, and having been an acquaintance of many years of both. Before, and at the time of appellant's birth, and thereafter, she lived across the street from Cora Beckwith and was well acquainted with her. Appellant offered to prove by the testimony of the witness that when the deceased Henry Schaible left Chelsea Cora Beckwith was pregnant. That appellant's mother told her of letters received by her from deceased; that she expected to join Schaible in the West; that appellant's father was Henry Schaible, deceased, and such fact was generally known in the community in which appellant, the witness and appellant's mother lived.

Objection to such offer of proof was sustained.

The testimony so offered comes within an exception to the hearsay rule. A witness may testify to such facts of family history as marriage, kinship, name and death where his knowledge of the subject is derived from intimate acquaintance with the family or families. Frank v. Harjo,

142 Okl. 157, 286 P. 14. Further, evidence that one is commonly known in the community where he was born and resides as the son of another person in the same community is admissible. Robertson v. Campbell, 168 Iowa 47, 147 N.W. 301; Tout v. Woodin, 157 Iowa 518, 137 N.W. 1001; In re Conner's Estate, 240 Iowa 479, 36 N.W. 2d 833; In re Estate of Wise, 206 Iowa 939, 221 N.W. 567; In re Wulf's Estate, 242 Iowa 1012, 48 N.W.2d 890, 33 A.L.R.2d 698; Daniels v. Johnson, 216 Ark. 374, 226 S.W. 2d 571, 15 A.L.R.2d 1401; In re Gray's Succession, 201 La. 121, 9 So.2d 481; Wigmore on Evid., 3rd Ed. Vol. V, Sec. 1605 and Anno.; In re Purcell's Estate, 11 Cal. App.2d 237, 53 P.2d 784; Carter v. Capshaw, 249 Ky. 483, 60 S.W.2d 959; Martin v. Martin, 233 Ala. 310, 171 So. 734; McCrary v. Matthews, 235 Ala. 409, 179 So. 367. The offered testimony was competent and should have been received.

Defense witnesses, Gaffney, Eggers, Stone, Wilcox, Erickson, Portfors and Heller, as friends, associates and acquaintances of decedent, testified in substance, over objection, that deceased never told them he had a son.

The pedigree or ancestry of appellant was not a matter deceased was publicizing among his friends and business associates. If the ancestry was as claimed by appellant, it was a matter that deceased was evidently attempting to conceal. There was no occasion testified to by said witnesses that required deceased to speak on the sub-

ject. His silence, under the circumstances, meant nothing. The fact that deceased did not publicize the matter in the community in which he lived is no proof that could be received in evidence to negative appellant's claim. The negative testimony offered and received in this case has no evidential value, is incompetent, is entitled to no weight, does not in itself contradict competent evidence in the case, and is insufficient in itself to defeat appellant's claim that he is the son of deceased. Illinois Bankers' Life Ass'n v. Theodore, 44 Ariz. 160, 34 P.2d 423; Britt v. Hall, 116 Iowa 564, 90 N.W. 340; Lauderdale v. O'Neill, 74 Okl. 119, 177 P. 113; Johnson v. Richmond, F. & P. R. Co., 160 Va. 766, 169 S.E. 603; Holmstedt v. Holmstedt, 383 Ill. 290, 49 N.E.2d 25; Hauswirth v. Pom-Arleau, 11 Wash.2d 354, 119 P.2d 674; Cox v. Polson Logging Co., 18 Wash.2d 49, 138 P.2d 169; In re Odberg's Estate, 67 Idaho 447, 182 P.2d 945; Southern Pacific Co. v. Fisher, 35 Ariz. 87, 274 P. 779; Globe Indemnity Co. v. Stenger, 82 Colo. 47, 256 P. 658.

Section 14–104 I.C. reads in part:

"Every illegitimate child is an heir of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child; * * *."

Under this provision of the statute, before appellant is entitled to inherit his alleged father's estate, he would not only have to prove that he was fathered by deceased, but it must also be made to appear that the

alleged father in writing, signed in the presence of a competent witness, acknowledged himself to be the father of such child. The writing by which appellant sought to establish his claim was not produced. It was claimed to have been made in an application for a life insurance policy. There was a conflict in the evidence as to whether or not such writing so acknowledging the relationship was ever made. The jury did not answer the question: "Did Herman Stone, also known as Herman Schaible, in writing, signed in the presence of a competent witness, acknowledge himself to be the father of Lawton Schaible?" Unless said question and the first question propounded are both answered affirmatively, appellant cannot inherit from the alleged father. Section 14-104 I.C.

The judgment is reversed and a new trial granted. Costs to appellant.

PORTER and SMITH, JJ., concur.

TAYLOR, Chief Justice, with whom ANDERSON, J., concurs (concurring and dissenting).

I dissent from the construction given § 9-202, sub. 3, I.C. In the first place, the question decided is not presented or urged by appellant, either by assignment of error or argument. What is said thereon by the majority is pure dictum.

Appellant made an offer of proof "that his mother told him on many occasions and at different times and places that Herman Schaible was his father". The offer was rejected. Appellant urges the proof should have been admitted under the pedigree exception to the hearsay rule. This was the question presented and I think correctly decided by the majority.

It is true the objection to the question set out in the majority opinion was taken on the ground the testimony is barred by subsection 3 of § 9-202 I.C., and the objection was sustained; but, appellant has not assigned that ruling as error and that section of the statute—the dead man's statute—is not referred to or cited in the brief of either party.

The statute could present no bar to the statements of the deceased mother, because this is not an action upon a claim or demand against her estate.

The record shows respondent objected and urged the bar of the dead man's statute to the question asked appellant, "Now at that time, 1947, did you have any conversation with Mr. Herman Schaible as to whether or not he was your father?" The objection was argued in the absence of the jury and the court announced that it would be overruled. In the presence of the jury the objection was overruled and the question answered, "I did." Then the question was asked, "Will you state, as nearly as you recall, that conversation? A. That he was my father and I would have practically no trouble proving it." The first question was clearly preliminary and the second was answered without objection. Having made no objection, appellant does not assign error.

Disregarding the record, and assuming an assignment not made, the majority holds that the dead man's statute does not bar the appellant as a witness, because this is not an action upon a claim or demand against the estate within the meaning of that statute, and that an heir is not barred thereby. To me this is a repeal or modification of the statute by the court without the slightest justification. The dead man's statute is not a mere rule of procedure, subject to the will of this court. It is a substantive rule of property, designed to protect estates of decedents against those who would take advantage of death to press unsupported claims to their property. The words, "Parties or assignees of parties", "or persons in whose behalf" are all-inclusive. They allow for no exceptions in the case of heirs, or any other class of persons making claim to the estate, or any interest therein. The proposition that "The right here asserted could not be enforced against the deceased in his lifetime", has nothing to do with the construction of the statute here involved. That is a consideration involved in determining what is a claim against an estate within the meaning of §§ 15–601 to 15–604 I.C., requiring the filing of claims with the executor or administrator. Ashbauth v. Davis, 71 Idaho 150, 227 P.2d 954, 32 A.L.R. 2d 361; Ferrell v. McVey, 71 Idaho 339, 232 P.2d 134. A promise, upon sufficient consideration, to make, or refrain from making, a will, is generally upheld by the courts, but is one which could not be enforced in the lifetime of the deceased. Ash-bauth v. Davis, supra. Appellant is within the inhibition of the statute. Burns v. Skogstad, 69 Idaho 227, 206 P.2d 765; Johnson v. Flatness, 70 Idaho 37, 211 P.2d 769; Ferrell v. McVey, supra; 58 Am.Jur., Witnesses, §§ 237, 279, 281, 282, and 306; 70 C.J., Witnesses, §§ 290 and 305.

On other issues I concur with the majority.