308 P.2d 597 (1957)
In the Matter of the ESTATE of Herman STONE, also known as H. A. Stone or Herman A. Stone or Herman A. Schaible, Deceased.
Lawton S. SCHAIBLE, Claimant-Appellant,
v.
R. W. HELLER, Administrator with the will annexed, Harley Moeckel and Bonnie Moeckel and Meryl Moeckel, Guardian ad Litem for said Harley Moeckel and Bonnie Moeckel, Defendants-Respondents.
No. 8429.
Supreme Court of Idaho.
March 18, 1957.
*598 Cox, Ware & Stellmon, Lewiston, Warren F. Gardner, Orofino, for appellant.
Paul W. Hyatt, Lewiston, Ray McNichols, Swayne & McNichols, Orofino, for respondents.
BAKER, District Judge.
Herman A. Schaible, who was generally known as Herman Stone, a bachelor, resident of Clearwater County for a period of more than forty years, died on March 19, 1951 at the age of seventy-nine years leaving a will by the terms of which his entire estate was given to a grandnephew and a grandniece. The will was admitted to probate and, one of the named executors being dead and the other declining to act, an administrator with the will annexed was appointed. Prior to hearing on petition for distribution in accordance with the will, Lawton S. Schaible, asserting that he was a pretermitted son and sole heir of deceased, filed objections to distribution under the will and prayed that the entire estate be distributed to him. His petition did not disclose that he claimed as an acknowledged illegitimate son.
From adverse decree in the probate court claimant appealed to the district court. Upon trial in that court two special interrogatories were submitted to the jury as follows: "Is Lawton S. Schaible the illegitimate son of Herman Stone, also known as Herman Schaible?" and "Did Herman Stone, also known as Herman Schaible, in writing signed in the presence of a competent witness, acknowledge himself to be the father of Lawton S. Schaible?" The jury was instructed that if the first question be answered in the negative the second need not be answered. The jury answered the first question in the negative and made no answer to the second. The jury's answer was adopted as finding of fact and decree was entered affirming the decree of the probate court distributing the estate in accordance with the will.
From that decree claimant appealed. The judgment was reversed, 77 Idaho 63, 286 P.2d 329, 333, for errors of law occurring at the trial. The cause was remanded for new trial. The sufficiency of the evidence to require or to sustain a finding that claimant was the illegitimate son of deceased or that deceased, by an instrument in writing signed by him in the presence of a competent witness, had acknowledged himself to be the father of claimant was not considered or determined.
On the former appeal this Court, after quoting from Section 14-104, I.C. that "Every illegitimate child is an heir of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child; * * *" said:
"Under the provisions of the statute, before appellant is entitled to inherit his alleged father's estate, he would not only have to prove that he was fathered by deceased, but it must also be made to appear that the alleged father in writing signed in the presence of a competent witness, acknowledged himself to be the father of such child."
Upon retrial no special interrogatories were submitted to the jury. By agreement of counsel two forms of general verdict, one in favor of the plaintiff (appellant) and the other in favor of the defendants (respondents) *599 were submitted. The jury returned general verdict in favor of defendants (respondents).
The court instructed the jury in part that:
"You are instructed that the issues to be determined by you in this case are these: First, is Lawton S. Schaible the illegitimate son of Herman A. Stone, also known as Herman A. Schaible, deceased?
"Second: Did Herman A. Stone, also known as Herman A. Schaible, deceased, in writing, in the presence of one or more competent witnesses, acknowledge himself to be the father of Lawton S. Schaible?
"If your answer to both of the foregoing questions is `yes', then your verdict must be in favor of the plaintiff.
"If your answer to either or both of the foregoing questions is `no', then your verdict must be in favor of the defendants."
The quoted instruction fairly and accurately directed the attention of the jury to the two disputed questions of fact actually involved and correctly stated, as this court decided, that the appellant could prevail only in the event both questions were answered in his favor. It is not contended that any other or additional question of fact was for the consideration of the jury.
Upon the general verdict the trial court found "that * * * the plaintiff has failed to prove that he is entitled to share in the estate of the deceased" and accordingly entered decree again affirming the decree of the probate court. It cannot be determined from the record whether the decree was entered upon findings in favor of the respondents on the issue of paternity or on the issue of acknowledgment or on both of said issues. Appellant did not question or object to the sufficiency of the findings or request the trial court to make more definite or certain findings or to find distinctly and separately on the two issues of fact involved.
From the decree so entered on the general verdict claimant has again appealed. His chief contention is that the evidence requires findings favorable to him on both questions of fact. He argues upon the premise, and apparently assumes, that the general verdict was a finding adverse to him on both of said questions.
We have concluded, on the first question, that the evidence is sufficient to require a finding that appellant is the illegitimate son of the deceased. At the time of the trial the two persons who had personal knowledge of the facts were deceased; naturally the evidence was circumstantial. It would serve no useful purpose to detail the circumstances established. Suffice it to say that the circumstances point definitely and rather conclusively to the fact that the relation of father and son existed between deceased and appellant.
The question of the suffciency of the evidence to require a finding that the deceased, in manner required by statute, Section 14-104, I.C., above quoted so far as material, had, in writing, acknowledged that he was the father of appellant renders consideration of the evidence necessary. Appellant's chief witness on this phase of the case was one Franklin J. Davidson, a life insurance agent, who testified by deposition on the first trial, in open court on the second. This witness on the trial testified that he was then eighty-one years of age, a personal friend of appellant, that he knew Herman Schaible (deceased) by sight and met him and his cousin, Albert Zahn, on a cold but snowless day in the early part of December, 1929, at the American Hotel in Ann Arbor, Michigan, that Zahn informed the witness that deceased wanted to purchase a policy of life insurance, that an application for a $1,000 policy in the Northern States Insurance Company of Michigan was prepared, that in its preparation he (witness) read the questions on the application and wrote in blank spaces left therefor the answers made by Schaible (deceased), that in answer to the question as to beneficiaries Schaible said the first beneficiary should be "my cousin, Albert Zahn, and I want my son, Lawton Schaible, second beneficiary", that such answer was written in the application which was then signed by deceased. *600 There is at least an indication that by deposition on the first trial he said that deceased refused to sign. He also testified on the second trial that he then requested payment of the premium, that Schaible did not have sufficient money with which to make payment, that some argument developed and the witness tore up the application and threw it into the wastebasket. He also testified that one McQueen, a general state agent for that and several other insurance companies, was present and prepared another application, that the witness heard Schaible say to McQueen: "I want to give one-half to my cousin and the other half to my son Lawton Schaible", that the statement was written on the application and it was signed by Schaible in the witness' presence, that Schaible was examined by a physician, that he (witness) subsequently received his commission, that Schaible later wrote to him that he desired to borrow on the policy and to change the beneficiaries, that he had made an unsuccessful search for the letter and a copy of his answer.
On cross-examination Davidson testified that he had known appellant for a long time and was very friendly with him, that the day on which he met Schaible in the American Hotel in Ann Arbor was early in December "way before Christmas", that it was cold but there was no snow on the ground, that he did not remember seeing Rudy (Rudolph) Heller on that day, that Schaible was clean-shaven and without beard or mustache.
Albert Zahn of the age of eighty-two years testified by deposition that on a Saturday "toward fall", "in September" in 1929 he visited Schaible (deceased) at the home of Rudolph Heller and his parents, that on Monday night he met Schaible in Ann Arbor and "after supper" he and Schaible went to the American Hotel in Ann Arbor where he heard Davidson and Schaible talk about a "twenty year" policy of insurance, that he heard Schaible say he wanted to name his son Lawton Schaible and the witness as beneficiaries, that he saw Davidson and McQueen write and Schaible sign applications but did not read either application and did not know the names of the named beneficiaries, that Rudy Heller was not present.
Respondents offered evidence that during the period of deceased's long residence in Orofino he had worn a mustache, several witnesses testifying that they had never seen him without one, that deceased arrived at Chelsea, Michigan, where he resided as a young man, by train on the evening of Friday, December 20, 1929, that on the afternoon of the following day Rudy (Rudolph) Heller took him by automobile to Ann Arbor, but an unusually heavy snow covered the ground, that the roads had been plowed but were passable, that they were in Ann Arbor for not more than two and one-half hours, visited two relatives, were in the American Hotel for lunch for not more than fifteen minutes, that they did not see or talk with Davidson or McQueen, that the deceased signed no paper while in Ann Arbor. The witness Heller further testified that deceased did not stay at his home but at the homes of other relatives while in Michigan on that trip, that during the preceding year witness and his parents had moved from the home they had previously occupied and that his mother, the survivor of his parents, died in January, 1929. Other witnesses testified as to deceased's whereabouts in that area from his return to Chelsea from Ann Arbor late on Saturday, December 21, 1929, until January 1, 1930, when he boarded a train at Jackson to return to Idaho where he was called by the death of a business associate, that he did not return to Ann Arbor. There was also evidence that no policy of insurance or record of payment of premium on any life insurance policy was found in deceased's papers. There was evidence that at the time Davidson said deceased was unable to pay the initial premium on the $1,000 policy he had a standing credit of $10,000 in a Spokane bank.
There was no contention that during the year 1929 deceased made more than one trip from Idaho to Michigan.
*601 The record fails to disclose even the slightest effort to locate and produce the original McQueen application which it is contended the deceased signed. Evidence of the contents of the McQueen application was offered as original and not as secondary evidence. At the conclusion of appellant's proof, respondents' counsel moved that the testimony as to the McQueen application be stricken upon the ground that "no foundation or basis for the admission of secondary evidence of the contents of such writing has been produced and that there is no evidence in the record as to the loss, destruction or unavailability of that particular writing". The motion was denied.
The motion should have been granted. The evidence as to the McQueen application cannot be considered.
Section 9-411, I.C. so far as material provides:
"There can be no evidence of the contents of a writing other than the writing itself, except in the following cases:
"1. Where the original has been lost or destroyed; in which case proof of the loss or destruction must first be made * * *".
The recitals in and the execution of the McQueen application were of great importance; the best evidence of both was the writing itself. Secondary evidence of contents should not have been received until proof had been made that the original writing itself could not be produced. Such proof was not made and no effort was made to establish inability to produce. On at least two occasions this Court has held that under such circumstances secondary evidence is inadmissible. Keane v. Pittsburg Lead Mining Co., 17 Idaho 179, 105 P. 60; Roddy v. State, 65 Idaho 137, 139 P.2d 1005. To the same effect are: 32 C. J.S., Evidence, § 837, p. 766; 20 Am.Jur. p. 385; Miller v. Miller, 121 Mont. 55, 190 P.2d 72; Incorporated Town of Sallisaw v. Wells, 90 Okl. 78, 216 P. 118.
The error was favorable to the appellant. Neither party is complaining in this Court. The error has no effect except to preclude the consideration of the evidence relating to the McQueen application.
The burden of proof was upon the appellant. From the foregoing statement it is at once apparent that the questions of the credibility of the several witnesses, the weight to be given to their testimony, whether the appellant had sustained the burden, whether the deceased by writing, signed by him in the presence of a competent witness, had acknowledged that he was the father of appellant were for the jury. Its answer is conceded to be that he did not sign such an acknowledgment. That conclusion is supported by competent and sufficient, and is sustained by the clear preponderance of the, evidence. The answer of the jury is conclusive and closes the door to further inquiry. Sec. 13-219, I.C. One of the most recent, among the many, declarations by this Court to that effect is Preston v. Schrenk, 77 Idaho 481, 295 P.2d 272.
By various assignments of error appellant complains of the failure of the trial court to instruct the jury in the language of Section 14-320, I.C. that:
"When any testator omits to provide in his will for any of his children, or for the issue of any deceased child, unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator as if he had died intestate and succeeds thereto as provided in the preceding section."
The verdict of the jury, although general, was its answers to specific questions of fact. The verdict was treated as special for upon it the court purported to make findings of fact. The succession statutes had nothing to do with the ability of the jury to make, and could not aid it in making, true answers to the special questions considered in reaching the general verdict. The assignment of error is without merit.
*602 Appellant complains that in several instances his offers of proof were rejected. Assuming the offers were to prove facts and not in part conclusions the rejection of the offers, if erroneous, were without prejudice to the appellant for all related to proof designed to support his claim of relationship and were material to that question only. Despite the rejection of the offers we have held the evidence to be sufficient to establish that the relation of father and son existed between deceased and appellant. No more can be said than that cumulative evidence was rejected. In some cases the offers were to prove hearsay statements of persons still living. Declarations of a living person may not be received under the exception to the hearsay rule as proof of matters of family history, relationship and pedigree. In re Stone's Estate, 77 Idaho 63, 286 P. 2d 329.
Appellant insists that Instruction No. 17 in these words:
"You are instructed, Members of the jury, that if you believe from the evidence in this case that any witness has wilfully and knowingly testified falsely to any material point in the case, you have the right to reject the entire testimony of such witness"
is incomplete and therefore erroneous because the words "unless it is corroborated by other witnesses whom you believe to be credible or by circumstances appearing in evidence" or equivalent words were not added.
It is not correct to say that a jury may in all instances disregard the entire testimony of a witness because the jury finds that he has wilfully testified falsely to some material fact. Of course, false testimony, either wilfully or innocently given, should be disregarded but the maxim "falsus in uno, falsus in omnibus" has no application to corroborated testimony not found to be false. The rule seems to be correctly stated in 58 Am.Jur. 499, Sec. 872 that:
"There is a general principle of law that where a witness has [wilfully] testified falsely to some material matter in a case, his testimony in other respects may be disregarded unless it is corroborated by other proof * * *."
In State v. Boyles, 34 Idaho 283, 200 P. 125, 126 the following instruction was approved:
"`Whenever it has been shown by the evidence to the satisfaction of the jury that a witness has willfully sworn falsely in any material matter, the jury is privileged to reject the testimony of such witness except when corroborated by other and reliable evidence'".
The practice in the trial courts has been to instruct substantially in the language of the instruction approved in the Boyles case. The error, if any, is not reversible.
We have considered with care the other assignments of error made by appellant and find them to be without merit.
Having failed to establish to the satisfaction either of the jury or this court that the deceased in writing signed by him in the presence of a competent witness had acknowledged himself to be the father of the appellant it follows the decree of the trial court must be and it is affirmed with costs to respondent.
KEETON, C. J., and PORTER, TAYLOR and SMITH, JJ., concur.
McQUADE, J., disqualified.