[Civ. No. 21243. First Dist., Div. Three. Jan. 2, 1964.]

Estate of WALTER PAUL WEIS, Deceased. PETER A. SCHWABE, as Guardian, etc., Petitioner and Respondent, v. TWELVEACRES, INCORPORATED, Objector and Appellant.

Joseph Landisman for Objector and Appellant.

Emmet B. Hayes for Petitioner and Respondent.

SALSMAN, J.—Respondent, Peter A. Schwabe, guardian of the estate of Myrtle Evans, filed a petition to determine interests in the estate of Walter Paul Weis. Appellant Twelveacres, Incorporated, responded, and after hearing, the

probate court determined that Myrtle Evans is decedent's half-sister and appellant is a charitable corporation within the meaning of Probate Code secton 41,[1] and hence its interest in the estate of the decedent is limited to one-third.

Walter Paul Weis died December 7, 1961. His last will, executed August 29, 1961, declared that he had no living relatives, and after certain bequests to strangers provided: "Eighth: All the rest and residue of my estate, I give devise and bequeath to Twelve Acres, Inc. of Los Altos, California."

There was undisputed evidence that appellant is a nonprofit corporation, and that it conducts a private, temporary home for children in Los Altos, California. Its articles of incorporation state its purposes to be "To conduct a children's home in accordance with the principles of Christian Science." The bylaws of the corporation provide that its members shall be "those students and friends of Christian Science who (a) state a desire to become members and (b) pay a minimum membership fee of twelve dollars ($12.00) a year." It is the duty of directors to assist "in the upbuilding of a home for children that will be a blessing to all in need of its shelter, and a channel for spiritual healing to all who come in contact with its activities, and to further the cause of Christian Science." Children eligible for admission to the home are "children whose parents or parent or guardian, are unable to provide a home for them, and who desire them to be under the care and training of Christian Scientists. . . ."

At trial, appellant offered testimony from a member of the board of directors of the corporation that eligibility for admission to the home was limited to children of the Christian Science faith; that the school makes a charge of $150 per month per child; that this amount is not sufficient to cover

---

[1] "§41. [Charitable and benevolent devises and bequests; restrictions.] No estate, real or personal, may be bequeathed or devised to any charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses, by a testator who leaves a spouse, brother, sister . . . who, under the will, or the laws of succession, would otherwise have taken the property so bequeathed or devised, unless the will was duly executed at least 30 days before the death of the testator. If so executed at least 30 days before death, such devises and legacies shall be valid, but they may not collectively exceed one-third of the testator's estate. . . ."

(Unless otherwise noted, all references to section numbers refer to the Probate Code.)

the full cost of a child's care; that the remainder of cost comes from membership fees and contributions from persons interested in the home; that care in the home is not offered on a charitable basis and that the home does not receive support from community welfare agencies, nor does the home participate in general charitable activities of the community. A letter attached to the bylaws describes the appellant as "Twelveacres, Incorporated, a nonprofit, tax exempt home for children."

 Appellant's principal contention is that it is not a charitable corporation within the meaning of section 41, because its activities do not benefit an indefinite number of persons (*Estate of Dol*, 182 Cal. 159 [187 P. 428]), nor is there any benefit to the community as a whole from its activities. On the record before us this contention cannot be sustained.

Appellant's contention has been answered by our Supreme Court in *Estate of Henderson*, 17 Cal.2d 853 [112 P.2d 605]. There the decedent made a gift by will to the Eastern Star Homes of California, "to be used by the trustees in such manner as may be most beneficial to the Home and its inmates." The home was not operated for profit and its purpose was to care for aged members of the Eastern Star. Moreover, care was extended only to aged members who had been members of the order for at least 10 years. Upon entry, the resident was required to transfer all assets to the home. The court held the corporation to be charitable within the meaning of section 41, and therefore limited to one-third of the decedent's estate. The court said: "A bequest is charitable if: (1) It is made for a charitable purpose; its aims and accomplishments are of religious, educational, political or general social interest to mankind. ... (2) The ultimate recipients constitute either the community as a whole or an unascertainable and indefinite portion thereof. ... The charitable nature of an institution is determined on the same basis." (*Estate of Henderson, supra*, at p. 857.)

In *Henderson, supra*, the court considered a gift made to a corporation conducting a home for aged persons; here we consider a gift made to a corporation conducting a home for children. In determining the charitable nature of such corporations there is obviously no distinction between the two activities. Society owes a duty to care for both old and young when they are dependent. Here appellant's purpose, as its articles and bylaws plainly declare, is to provide a

home for children whose parents cannot provide a home for them. Its services are available generally and its financial support comes, in part at least, from the general public. Appellant's purposes and manner of operation thus demonstrate its charitable nature.

Appellant argues that the benefits of charity must extend to "an indefinite number of persons," citing *Estate of Dol, supra,* 182 Cal. 159, 164. The evidence here it is said does not show compliance with this requirement. It is true there was testimony at trial to the effect that appellant's facilities are available only to Christian Scientists. The unambiguous language of the articles and bylaws does not support this interpretation, however, but even if its services were offered only to Christian Scientists this would not necessarily operate to remove appellant from its status as a charitable corporation. In *Henderson, supra,* the court said, at page 861: "A charity may be validly restricted to an indefinite class within the community so long as the class is large enough to make the enforcement of the gift beneficial to the community." As we have said, society owes a duty to care for both dependent aged and children, and to the extent that appellant's activities operate to discharge this duty, benefit to the community as a whole is apparent. In *Henderson* also, benefits of the home were restricted to members of the Eastern Star, and were further limited to a select number of that order, namely those who had been members for at least 10 years. Restrictions imposed upon eligibility of children to the home conducted by appellant appear far less stringent than those considered in the *Henderson* case.

 Finally, the payment of fees or tuition is no deterrent to a finding that the corporation is charitable where, as here, the income is used only to maintain the institution. (*Henderson, supra,* at p. 850; *Sarah Dix Hamlin School* v. *City & County of San Francisco,* 221 Cal.App.2d 336 [34 Cal.Rptr. 376].) We conclude that the probate court was correct in finding appellant to be a charitable corporation within the meaning of section 41.

 The probate court found that Myrtle Evans is decedent's "half-sister, being the daughter of decedent's father, Louis Weis, by his second marriage to Jennie L. Weis." Appellant challenges this finding on the ground that the evidence is insufficient to support it. Myrtle Evans, because of her incompetency, was unable to offer any testimony or evidence bearing upon her relationship to the decedent. In

attempting to prove family relationship between the decedent and Myrtle Evans, respondent offered in evidence certified copies of various documents such as death certificates, a marriage certificate, divorce complaints, and copies of documents relating to the insanity proceedings of Myrtle Evans. Exhibits 10 and 11 were certified copies of documents relating to the administration of the estate of Ardell I. Weis, a sister-in-law of the decedent. Appellant objected to the introduction of all of these documents as hearsay and now argues that the probate court's finding that Myrtle Evans is a half-sister rests upon hearsay evidence only. We need not discuss each of the documents in evidence because we have concluded that Exhibit 11, although hearsay, was properly admitted into evidence and alone is sufficient to support the finding.

Exhibit 11 consists of various pleadings in the Estate of Ardell I. Weis. There is first a petition filed by the administrator of the estate, seeking an order determining the domicile of the decedent. Service of this petition was made upon Walter Paul Weis and he filed an answer in which he alleged that "the heirs at law of Henry A. Weis, now living, are Walter Paul Weis, a brother, and Myrtle Evans, a half sister, and that the only heir at law of Ardell I. Weis, now living, is Mabel R. Smith, a sister." Since the declarations mentioned in Exhibit 11 are here offered to prove the truth of the assertions therein made, that is, that Myrtle Evans is a half-sister of Walter Paul Weis, it is clear they are hearsay. (See 5 Wigmore, Evidence (3d ed.) §§ 1481 et seq.; McCormick, Evidence, p. 621.) Nevertheless, although hearsay, the declarations are admissible in evidence because they come within the "family history" or "pedigree" exception to the hearsay rule and the declaration against interest exception. Code of Civil Procedure section 1870 provides: " . . . evidence may be given upon a trial of the following facts: . . . 4. The act or declaration, verbal or written, of a deceased person in respect to the relationship, birth, marriage, or death of any person related by blood or marriage to such deceased person; . . ." *Estate of Smith,* 33 Cal.2d 279 [201 P.2d 539] illustrates the application of this rule. There a declaration of a deceased person was offered to show that a certain woman was not the wife of the decedent. The court held the declaration admissible, stating: "Declarations of a deceased person in respect to his relationship to any person are admissible as an exception to the hearsay rule. ..." (*Id.* at p. 282.) (See also, *Estate of Morgan,* 203 Cal. 569, 576 [264 P. 241]; *Estate of Connors,*

53 Cal.App.2d 484, 488 [128 P.2d 200]; *Estate of Purcell*, 11 Cal.App.2d 237, 242-243 [53 P.2d 784].) ▋ Requirements for the exception to be applicable are declarant (1) must have been a member of the family, (2) must be unavailable as a witness, and (3) must have made the declaration under circumstances that do not throw doubt on its credibility. (See Hale, *Proof of Facts of Family History*, 2 Hastings L.J. 1; McCormick, Evidence, pp. 621-623; Witkin, Cal. Evidence, 314-315.)

▋ The declaration also falls within the declaration against interest exception to the hearsay rule. Code of Civil Procedure section 1946 reads: ''The entries and other writings of a decedent, made at or near the time of the transaction, and in a position to know the facts stated therein, may be read as prima facie evidence of the facts stated therein, in the following cases: one—When the entry was made against the interest of the person making it. ...'' (See generally, Witkin, Cal. Evidence, 289-290.) ▋ The requirements of this exception are that (1) the declarant be unavailable and (2) the declaration state facts which are against the pecuniary or proprietary interest of the declarant. See generally, McCormick, Evidence 546-554.) ▋ Here, the declarant is unavailable by death, and at the time of the declaration, Walter Paul Weis was knowingly stating facts about Myrtle Evans which were contrary to his interest in the estate; for by conceding that Myrtle Evans was his half-sister, declarant would receive a lesser share in the estate of Ardell I. Weis. Thus Exhibit 11 was admissible as a declaration against interest of Walter Paul Weis. (*Estate of Raphael*, 91 Cal.App. 2d 931, 939 [206 P.2d 391]; *Mayfield* v. *Fidelity & Casualty Co.*, 16 Cal.App.2d 611, 617 [61 P.2d 83].)

Decedent's declarations contained in Exhibit 11 were properly admitted in evidence, and constitute sufficient evidence to support the finding that Myrtle Evans is a half-sister of the decedent.

Judgment affirmed.

Draper, P. J., and Devine, J., concurred.